ST. LOUIS SOUTHWESTERN RY. CO. v. S. SAMUELS & CO.

(Circuit Court of Appeals, Fifth Circuit. February 17, 1914. Rehearing Denied March 31, 1914.)

No. 2506.

1. COURTS (§ 256*)—INTERSTATE COMMERCE ACT—IMPLIED REPEAL—JUDICIAL CODE—ACTION FOR REPARATION—VENUE.

Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1101 [U. S. Comp. St. Supp. 1911, p. 150]) § 51, provides that, except as otherwise provided, no person shall be arrested in one district for trial in another in any civil action before a district court, and that no suit shall be brought in any district court by any original process or proceeding in any other district than that whereof he is an inhabitant, etc. Section 297, specifically providing for the repeal of certain acts other than Interstate Commerce Act (Act Feb. 4, 1887, c. 104, § 16, 24 Stat. 384 [U. S. Comp. St. 1901, p. 3165], as amended by Act Cong. June 18, 1910, c. 309, § 13, 36 Stat. 554 [U. S. Comp. St. Supp. 1911, p. 1301]), provides that where an interstate carrier refuses to comply with an order of the Interstate Commerce Commission for the payment of money in reparation, suit may be brought on the order in the District Court in which the beneficiary resides, or in which is located the carrier's principal operating office. *Held*, that such provision was not repealed by implication, and hence a suit on a commission's order was properly brought in the district of the beneficiary's residence.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 792; Dec. Dig. § 256.*

Jurisdiction of federal courts of suits under Interstate Commerce Act, see note to Bailey v. Mosher, 11 C. C. A. 318.]

2. COMMERCE (§ 88*)—INTERSTATE COMMERCE COMMISSION—REPORT—REPARATION ORDER—VALIDITY.

The report of the Interstate Commerce Commission on a claim for reparation for excessive charges due to misrouting of a shipment, and order for reparation *held* not contradictory, misleading, or confusing, nor objectionable for uncertainty.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 139, 141; Dec. Dig. § 88.*]

3. COMMERCE (§ 88*)—INTERSTATE COMMERCE—PROCEEDINGS BEFORE COMMISSION—EXTENT OF RELIEF.

Where pending proceedings before the Interstate Commerce Commission for reparation for excessive charges on a specified shipment due to the carrier's misrouting it, because no through rate had been provided over shorter routes, the carriers established a through rate by such shorter routes, it was not necessary that the Commission in granting reparation should enter any order with reference to the through rate so adopted or prohibit the use thereafter of any rate in excess of the one adopted.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 139, 141; Dec. Dig. § 88.*]

4. COMMERCE (§ 98*)—INTERSTATE COMMERCE—RATES—REPARATION ORDER.

Where a reparation order was entered May 1, 1911, and defendant seasonably filed a motion for rehearing, which was not denied until October 9th following, suit not having been brought on the order until after the rehearing was denied, defendant was not prejudiced by the fact that the order required payment on or before January 15, 1911.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 148; Dec. Dig. § 98.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**5. Trial (§ 177\*)—Questions of Law or Fact—Direction of Verdict—Application by Both Parties.**

Where plaintiff sued on a reparation order of the Interstate Commerce Commission, the finding of the Commission that the rate charged plaintiff was unreasonable and the fixing of the excess over the reasonable rate constituted a prima facie case in favor of plaintiff's right to recover the difference, and no evidence to the contrary having been offered, and both parties having moved for a peremptory instruction, the court properly directed a verdict for plaintiff.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 400; Dec. Dig. § 177.\*]

In Error to the District Court of the United States for the Southern District of Texas; Waller T. Burns, Judge.

Action by S. Samuels & Co. against the St. Louis Southwestern Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Prior to May, 1909, no shipment of cotton linters had ever moved to Houston, Tex., from points in the state of Arkansas on the line of railroad operated by the plaintiff in error. Shipments of this character generally went to manufacturing points in the Middle West; and there was a small export movement through New Orleans. The line of railroad of plaintiff in error does not run into the state of Texas, therefore not to Houston, which is in the interior. Its published rates, established jointly and in connection with other carriers that did run to Houston, did not at that time provide for shipments of that commodity because there had been in the past no other shipments of it, nor requests for rates on such shipments. It did have established, in connection with other carriers, a rate on linters to New Orleans, La., and the Sunset Central Lines had a cotton rate from New Orleans to Houston, which was represented as a rate on cotton linters.

In May, 1909, defendants in error tendered to plaintiff in error, at the station of England in the state of Arkansas, a shipment of cotton linters, which they desired to have transported to Houston, Tex. Defendants in error requested that they be protected in the through rates. There were two direct routes to Houston from England, one by way of Shreveport, La., thence to Houston over the Houston & Shreveport Railroad Company, and another by way of Tyler, Tex., reached by the St. Louis Southwestern Railway Company of Texas, a connection of plaintiff in error, and thence to Houston over the International & Great Northern Railroad. There was no rate on cotton linters via either of these routes, and the only rate on cotton applicable over either route was for cotton in round bales. On application to the Sunset Central Lines plaintiff in error was informed that the latter had a rate upon which linters might travel from New Orleans to Houston, and the shipment was thereupon routed over those lines. The rate charged and collected for the carriage was 66 cents, being the 48 cent rate as published from England to New Orleans, plus the 18 cent rate of the Sunset Central Lines from New Orleans to Houston. The route via New Orleans is about 300 miles longer than that via Tyler and Shreveport.

On complaint of defendants in error, the Interstate Commerce Commission, on May 1, 1911, entered an order by the terms whereof plaintiff in error was required to pay defendants in error $135.50, with interest from June 24, 1909, on or before July 15, 1911. Plaintiff in error filed with the Commission an application for a rehearing, which was not acted upon until October of that year, when it was overruled. This suit was instituted on January 26, 1912, in the District Court of the United States for the Southern District of Texas, at Houston, by S. Samuels & Co. against the St. Louis, Southwestern Railway Company to reduce to judgment this reparation order of the Interstate Commerce Commission. A supplemental petition was filed by plaintiffs August 24, 1912, alleging the domicile of plaintiff in error to be in the city of St.

Louis, Mo. On September 23, 1912, the defendant filed a plea to the jurisdiction, and on March 7, 1913, an original answer, subject to the action of the court on the plea to the jurisdiction, consisting of demurrers, general and special, a general denial, and several special defenses. Hearing of the plea to the jurisdiction having been passed by the court, without prejudice thereto, it was considered with the defendants' demurrers and exceptions on March 7, 1913, whereupon the court overruled the plea and all of the demurrers and exceptions, to which action and ruling the defendant reserved exceptions. All parties thereupon announced ready, the pleadings were read, and the evidence adduced. Before the jury retired the defendants requested a peremptory instruction in its favor, and, subject to the refusal thereof, six special instructions, all of which were refused. The court instructed a verdict in favor of the plaintiffs, which the jury returned on March 7, 1913, and upon which, on the same date, judgment was rendered against defendant in favor of plaintiffs for the amount sued for, $135.50 and interest, and also for an attorney's fee of $50.

Robert H. Kelley, of Houston, Tex., for plaintiff in error.
B. F. Louis, of Houston, Tex., for defendant in error.

Argued before PARDEE and SHELBY, Circuit Judges, and GRUBB, District Judge.

PARDEE, Circuit Judge (after stating the facts as above). The assignments of error are 63 in number, but counsel for plaintiff in error submit some 8 called "main propositions" as relied upon, and we reduce them to 2, to wit: Had the United States Court jurisdiction? And, Was the reparation order of the Interstate Commerce Commission valid?

[1] The District Court had jurisdiction because of the residence in the Southern district of S. Samuels under section 16 of the amended act to regulate commerce approved June 18, 1910, c. 309, 36 Stat. 554, unless the said section was repealed by the Judicial Code of 1912.

Section 51 of the Judicial Code reads as follows:

"Except as provided in the five succeeding sections, no person shall be arrested in one district for trial in another, in any civil action before a district court; and, except as provided in the six succeeding sections, no civil suit shall be brought in any district court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant; but where the jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or the defendant." 36 Stat. 1101.

The five succeeding sections do not cover a case like the present. Section 297 of the Judicial Code specifically repeals certain sections of the Revised Statutes, and certain acts and parts of the acts, and concludes as follows:

"Also all other acts and parts of acts, in so far as they are embraced within and superseded by this act, are hereby repealed; the remaining portions thereof to be and remain in force with the same effect and to the same extent as if this act had not been passed."

Among the parts of the acts repealed are:

"Sections one, two, three, four, five, the first paragraph of section six, and section seventeen of an act entitled 'An act to create a commerce court, and to amend an act entitled "An act to regulate commerce," approved February

fourth, eighteen hundred and eighty-seven, as heretofore amended, and for other purposes,' approved June eighteenth, nineteen hundred and ten."

From which it is seen that Congress particularly considered the said act approved June 18, 1910, for repealing purposes, and as section 16 was not included in the repealed sections, there arises a very strong presumption that other parts of the act were to be left in force. "Inclusio unius est exclusio alterius."

Repeals by implication are not favored. The adjudged cases cited by plaintiff in error settle that; and all of them are to the effect that to hold a law repealed by implication, the intention to repeal must be clear and manifest, and it is clear that an intention to repeal said section 16 in the matter of venue is not manifest.

Section 51 of the Judicial Code deals generally with venue in the District Courts in the cases in which jurisdiction is given by the Code, and it is not to be presumed that it was intended to restrict jurisdiction or affect the venue in other acts of Congress not enumerated, wherein jurisdiction is specially granted and the venue fixed.

Counsel for defendant in error well says in his brief:

"Clearly the Legislature did not intend to cover this legislation upon a particular subject by the enactment of the general law. The real reason which doubtless actuated Congress to confer jurisdiction upon the Circuit Court of the district in which the complainants reside was to provide a means for a shipper to enforce the reparation order for a small amount, as in this case, without having to go 1,000 miles and incur an expense in excess of the amount of the award.

"The legislative body must have known that, in the great majority of cases, orders of reparation would not be for large sums, and that in each instance shippers would start in with a handicap in that the transportation company with its regularly retained corps of attorneys, its free transportation facilities for them, and its witnesses, together with its vast wealth and power, would be able, by declining to pay an order of the Commission, practically to defeat such order, unless the shipper could be brought near enough to a forum where he could enforce such order without being compelled to expend more than the reparation allowed."

The intention of Congress in regard to venue in cases of this kind is shown by the following from the late act of Congress abolishing the Commerce Court, and transferring jurisdiction to the District Court, approved October 22, 1913:

"The venue of any suit hereafter brought to enforce, suspend, or set aside, in whole or in part, any order of the Interstate Commerce Commission shall be in the judicial district wherein is the residence of the party or any of the parties upon whose petition the order was made, except that where the order does not relate to transportation or is not made upon the petition of any party the venue shall be in the district where the matter complained of in the petition before the Commission arises, and except that where the order does not relate either to transportation or to a matter so complained of before the Commission the matter covered by the order shall be deemed to arise in the district where one of the petitioners in court has either its principal office or its principal operating office. In case such transportation relates to a through shipment the term 'destination' shall be construed as meaning final destination of such shipment."

For these reasons we will hold that section 16 of the act of June 18, 1910, was not repealed by the Judicial Code.

This conclusion renders it unnecessary to decide whether because

the injury complained of occurred in 1909, and the order of reparation sued on was issued by the Interstate Commerce Commission in May, 1911, this case comes under the saving clause in section 300 of the Judicial Code, providing as follows:

"All offenses committed, and all penalties, forfeitures, or liabilities incurred prior to the taking effect hereof, under any law embraced in, or repealed by, this act, may be prosecuted and punished, òr sued·for and recovered, in the district courts, in the same manner and with the same effect as if this act had not been passed"

—and the Judicial Code, though passed in March, 1911, did not go into effect until January 1, 1912. ·

The reparation order issued by the Interstate Commerce Commission was rendered on a petition by Samuels & Co. against the plaintiff in error herein and several other railroad companies, complaining that the rate collected for transportation of certain cotton linters was excessive and unreasonable, and praying for an order establishing a reasonable through route and joint rate for the carriage of cotton linters from England, Ark., to Houston, Tex., and asking that reparation be awarded. And the Commission, finding that, pending the order, a satisfactory through route and joint rate for cotton linters had been established between the points named passed only upon the reparation . to be awarded; and as to that the Commission· found and ·ordered as follows:

"The testimony indicates that the initial carrier held the linters at England three or four weeks. During that time the carrier might have secured permission from the Commission to publish a rate from England to Houston on short notice; or, by holding the linters for a short additional period, it might have published the rate on full statutory notice. And while it was under no legal obligation to adopt the former method, it was certainly its duty to provide a rate via a reasonably direct route as soon as lawful· publication thereof could be made. But, assuming that the carrier was willing to take the responsibility of forwarding the shipment via a route over which no rate was published, as it did, we are of opinion that it ought to have sent it over a direct route. Having taken that course, and a reasonable rate having subsequently been established over the route of movement, the carrier would have been in position to apply for permission to make settlement upon basis of the rate so established. The situation is ·one in which the shipper was helpless. He had directed carriage of his goods by the direct and natural route. The failure to comply with his instructions was due to the fact that the initial carrier had not provided a rate over the direct route, and did not make a reasonable effort to do so.

"We do not find that a rate of 66 cents was unreasonable for a haul via New Orleans, but we are of the opinion that the rate of 46½ cents, subsequently established, would have been a reasonable. rate via either of the direct routes, and that the failure of the initial carrier to forward the shipment over a direct· route resulted in damage to complainant in an amount measured by the difference between the rate which should have been established and the rate which he was forced to pay. Our conclusion therefore is that the St. Louis Southwestern Railway Company should be required to make reparation to complainant as for a misrouting in the sum of $135.50, with interest from June 24, 1909. An order will be ·entered accordingly."

"Order.

"This case being at issue upon complaint and answers on file, and having been duly heard and submitted by the parties, and full investigation of the matters and things involved having been had, and the Commission having, on.

the date hereof, made and filed a report containing its findings of fact and conclusions thereon, which said report is hereby referred to and made a part hereof: It is ordered that defendant, St. Louis Southwestern Railway Company, be, and it is hereby, notified and required, on or before the 15th day of July, 1911, to pay unto complainant, S. Samuels & Co., a partnership composed. of S. Samuels and H. Samuels, the sum of $135.50, with interest thereon at the rate of 6 per cent. per annum from June 24, 1909, as reparation for an unreasonable rate charged for the transportation of four car loads of cotton linters from England, Ark., to Houston, Tex., which rate so charged has been found by this Commission to have been unreasonable, as more fully and at large appears in and by said report."

The plaintiff in error contends that the report and reparation order are null and void because:

"(a) The order of the Interstate Commerce Commission and the report upon which said order is based and founded are on the face thereof ambiguous, contradictory, misleading, confusing, and uncertain.

"(b) Said report and order show upon their face that the order is not a final order or award, because it does not dispose of all parties and all issues involved.

"(c) The report and order of the Interstate Commerce Commission fail to show upon their face, and there is no evidence, that said order was either accompanied by or founded upon a further order of the Interstate Commerce Commission fixing, prescribing, and establishing for the future a reasonable maximum rate for shipments of cotton linters from England, Ark., to Houston, Tex., to be observed and protected in the future, or fixing, prescribing, or establishing for the future a reasonable route for such shipments to be observed and used in the future, and prohibiting the use, protection, and observance in the future of any rate in excess of the reasonable maximum rate so fixed, or of any route other or less reasonable or longer than the reasonable route so prescribed.

"(d) The reparation order here sued upon was void because it was entered on May 1, 1911, and required the payment of the sum therein specified on or before July 15, 1911; plaintiff in error seasonably filed its motion for a rehearing, which was not acted upon until October 9, 1911; the time limit in the original order was never at any time extended by the Commission, and therefore it was impossible for plaintiff in error to comply with the order when it finally became effective on October 9, 1911."

As to this contention, we conclude:

[2] (a) The report of the Commission and the order based thereon seem to us to be clear and certain, and neither contradictory, misleading, nor confusing.

(b) In the light of the report, finding that the plaintiff in error was the initial carrier and responsible for the routing resulting in the excessive charge and the only defendant liable, we find that the order practically disposes of all parties and issues involved.

[3] (c) As the report shows that pending the hearing a satisfactory joint route and through rate had been established by the carriers, there was no occasion nor requirement that the Commission should enter any further order in regard to such through rate. As to prohibiting the use thereafter of any rate in excess, the law is sufficient for that.

[4] (d) That the reparation order was void because entered on May 1, 1911, and required the payment of the reparation on or before January 15, 1911, for the reason that plaintiff in error had seasonably filed a motion for rehearing which was not acted upon until October 9, 1911, and the original order was never extended, etc., is too technical.

to merit much consideration. The rehearing was refused before this suit was brought, and plaintiff in error has not been prejudiced.

[5] The finding of the Commission that the rate charged Samuels & Co. was unreasonable, and fixing the excess over a reasonable rate, is, under the law, prima facie correct, if not conclusive; and, as no evidence to the contrary was offered on the trial, and both parties asked for a peremptory instruction, there was no error in directing a verdict for the plaintiff.

On the whole case, we find no reversible error, and the judgment of the District Court is affirmed, with costs.