**INLAND MOTOR FREIGHT et al. v. UNITED STATES (INTERSTATE COMMERCE COMMISSION et al., Interveners).**

**Civ. A. No. 427.**

District Court, E. D. Washington.
April 27, 1945.

522

J. M. Hickson and C. E. Holbrook, both of Portland, Or., for plaintiffs.

Edward Dumbauld, Sp. Asst. to Atty. Gen., Wendell Berge, Asst. to Atty. Gen., and Edward M. Connelly, U. S. Atty., of Spokane, Wash., for defendant.

Nelson Thomas, of Washington, D. C., for Interstate Commerce Commission.

James H. Ganoe, of Portland, Or., for intervenor defendant Tocco.

Before STEPHENS, Circuit Judge, and SCHWELLENBACH and CLARK, District Judges.

**SCHWELLENBACH, District Judge.**

This suit is brought under the Urgent Deficiencies Act of October 22, 1913, 38 Stats. 216, 28 U.S.C.A. § 41(28), §§ 46–48, by a number of motor carrier operators to set aside a certain order of the intervening defendant Interstate Commerce Commission granting the intervening defendant John W. Tocco a certificate of convenience and necessity under the provision of Sec. 207 of the Motor Carrier Act, 49 U.S.C.A. § 307, authorizing operations by irregular routes as a common carrier of freight by motor vehicle within portions of the States of Washington, Oregon and Idaho. The Commission's Order, which became effective November 8, 1943, granted Tocco the right to transport general merchandise except dangerous explosives, bulk liquids and commodities of unusual value between Seattle and Tacoma, Washington, and Portland and Salem, Oregon, and the territory which may roughly be described as the south half of Eastern Washington and the north half of Eastern Oregon and points in Idaho and between those portions of Oregon and Washington and points in Idaho.

The original application out of which this order grew was filed in 1936 for a "grandfather" certificate or permit. Upon the filing by these plaintiffs and others of protests against such application and various hearings thereon exclusively under the "grandfather" clause, the Commission, on June 22, 1940, denied the application under the "grandfather" clause but, on its own motion, converted the application to one under the public convenience and necessity provisions of the Act. This order became effective November 4, 1940, and thereupon plaintiffs in this suit commenced an action in this Court to set aside such order alleging that they had been deprived of a fair hearing. On March 18, 1941, the Commission, recognizing that the suit was well founded, vacated its previous order and reopened the hearing to consider the application both under the "grandfather" clause and the public convenience and necessity provisions of the Act. Thereupon

the previous suit was dismissed. In July, 1941, complete hearings on both phases of the proceedings were held before the Commission's joint Board. Voluminous testimony was presented both by Tocco and the protestants. Tocco submitted (1) his own oral testimony, (2) the testimony of shippers and (3) a voluminous Exhibit 13 which contained an abstract or summary of shipments between September, 1933, and May, 1941. Of the 1400 shipments included in the summary, all but 150 were moved after September 11, 1936. On June 19, 1943, the Commission made its Report and Order, which is the basis of the present action. In this Order Tocco was denied relief under the "grandfather" clause but his application was granted upon the basis of public convenience and necessity. On November 8, 1943, plaintiffs' petition for rehearing was denied and the Order became effective. This action was commenced August 23, 1944. Later the defendants Interstate Commerce Commission and Tocco intervened.

At the threshold of the case, we are met with the defense of laches. The defendant and intervening defendants contend that the nine months delay between the effective date of the Order and the commencement of this suit was so unreasonably long as to deprive plaintiffs of the benefit of the relief they here seek. In support of this defense, there was submitted the testimony of Tocco. He testified that during the months of February, March, and April, 1944, relying upon the Order, he purchased $81,318.41 worth of trucks, trailers, etc. He improved his terminal facilities by installing hoists, tools and welding outfits at an expense of approximately $3000 and that he spent a few hundred dollars in improving his terminal building and grounds. Assuming arguendo the availability of this defense in an action of this kind, we are convinced that the facts here submitted do not justify its application in this case. The mere lapse of time, in itself, is not sufficient to justify the interposition of the defense of laches. Such lapse of time must have worked to the disadvantage of the party relying upon the defense. Southern Pacific Co. v. Bogert, 250 U.S. 483, 490, 39 S.Ct. 533, 63 L. Ed. 1099; O'Brien v. Wheelock, 184 U.S. 450, 493, 22 S.Ct. 354, 46 L.Ed. 636; Galliher v. Cadwell, 145 U.S. 368, 373, 12 S.Ct. 873, 36 L.Ed. 738; Leonard v. Gage, 4 Cir., 94 F.2d 19, 25. Professor Pomeroy states the rule (1 Pomeroy Equitable Remedies, Sec. 21): "Laches, in legal significance, is not mere delay, but delay which works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law, but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as estoppel against the assertion of the right." Tocco readily admitted that the few hundred dollars spent by him in changing his terminal building and grounds was of value to him even though this certificate had not been granted. He also admitted that the trucks, trailers and equipment which he purchased were readily saleable. He based his contention on the fact that they were not saleable "at a premium." That is not a sufficient disadvantage to be used as a basis for the defense of laches.

After full consideration of the Order and the testimony received by the Commission in support thereof, we are convinced that the case must be remanded to the Commission so that the necessary basic or essential findings in proper and definite form may be made. While it is true that under the provisions of the Interstate Commerce Act, which expressly requires findings only where reparations or damages are awarded, 49 U.S.C.A. § 14(1), the Commission is relieved of the necessity of making findings similar to those required by the equity rules, this does not obviate the necessity of making basic or quasi jurisdictional findings essential to the statutory validity of the order. Eastern-Central Motor Carriers Association v. United States, 321 U.S. 194, 211–212, 64 S. Ct. 499, 88 L.Ed. 668; United States v. Carolina Freight Carriers Corporation, 315 U.S. 475, 489, 62 S.Ct. 722, 86 L.Ed. 971; Howard Hall Co., Inc. v. United States, 315 U.S. 495, 499, 62 S.Ct. 732, 86 L.Ed. 986; United States v. Baltimore & Ohio R. Co., 293 U.S. 454, 464, 55 S.Ct. 268, 79 L.Ed. 587. The reason for this rule was stated by Justice Douglas in United States v. Carolina Freight Carriers Corporation, supra, as follows [315 U.S. 475, 62 S.Ct. 729]: "Congress has made a grant of rights to carriers such as appellee. Congress has prescribed statutory standards

pursuant to which those rights are to be determined. Neither the Court nor the Commission is warranted in departing from those standards because of any doubts which may exist as to the wisdom of following the course which Congress has chosen. Congress has also provided for judicial review as an additional assurance that its policies be executed. That review certainly entails an inquiry as to whether the Commission has employed those statutory standards. If that inquiry is halted at the threshold by reason of the fact that it is impossible to say whether or not those standards have been applied, then that review has indeed become a perfunctory process. If, as seems likely here, an erroneous statutory construction lies hidden in vague findings, then statutory rights will be whittled away. An insistence upon the findings which Congress has made basic and essential to the Commission's action is no intrusion into the administrative domain. It is no more and no less than an insistence upon the observance of those standards which Congress has made 'prerequisite to the operation of its statutory command.' Opp Cotton Mills, Inc. v. Administrator, 312 U.S. 126, 144, 61 S.Ct. 524, 532, 85 L.Ed. 624. Hence that requirement is not a mere formal one. Only when the statutory standards have been applied can the question be reached as to whether the findings are supported by evidence." The findings by the Commission must be specific and definite so as to enable a reviewing court to know from a reading of the findings which facts were used by the Commission as the basis for the conclusions which it reached. Wichita R. & Light Co. v. Public Utilities Commission, 260 U.S. 48, 58, 43 S.Ct. 51, 67 L.Ed. 124; Beaumont, Sour Lake & Western R. Co. v. United States, 282 U.S. 74, 86, 51 S.Ct. 1, 75 L.Ed. 221; State of Florida v. United States, 282 U.S. 194, 214, 51 S.Ct. 119, 75 L.Ed. 291. The findings of the Commission must be at least sufficiently simple and clear as not to leave the Court in the position of being compelled to spell out, to argue and to choose between conflicting inferences. United States v. Chicago, Milwaukee, St. Paul & Pacific R. Co., 294 U.S. 499, 510, 55 S.Ct. 462, 79 L.Ed. 1023. The Order of any administrative board or commission must be sufficiently definite to enable the court to determine upon which part of the record the findings are based. National Labor Relations Board v. Virginia Electric & Power Co., 314 U.S. 469, 479–480, 62 S.Ct. 344, 86 L.Ed. 348.

In the Order here under consideration, there is no finding to the effect that there was no existing service in operation over the area applied for or that such service was inadequate or that the existing carriers could not furnish and are not satisfactorily furnishing the service required. The state courts universally have recognized the necessity for some such conclusion as a basis for public convenience and necessity certificates under state statutes. An extensive note covering decisions of the state courts on this question is to be found in 67 A.L.R. p. 957. The language of Section 207 of the Motor Carrier Act was taken verbatim from the state statutes in existence at the time of the adoption of the Act. Concerning that language, Senator Wheeler, who had charge of the bill in the Senate, said this: "This is a provision which is in practically every State law at the present time. There was some objection to it, and a suggestion was made that we should not use the word 'future' in connection with 'public convenience and necessity', and that we should not use the words 'public convenience and necessity.' But those words have been adopted by almost every State in the Union where there is a law, they have been interpreted by the courts, and the committee felt that, while perhaps some other language might have been just as appropriate, nevertheless, that language having been construed by the courts, it would be unwise for the committee to write some other language in the law which would have to be passed upon by the courts." Congressional Record, Vol. 79, pt. 5, p. 5653. (74th Cong. First Session). The Commission itself has recognized the rule enunciated by the state courts. Bluenose Bus Company Application, 1 M.C.C. 173, 176; Pan American Bus Lines, 1 M.C.C. 190, 203; Richards Extension of Operation, 6 M.C.C. 80, 81.

The defendants attempt to excuse the failure to include findings on the question of the inadequacy of existing services by contending that proof that long continued and successful operation is proof that there is a public need for the operation and that, upon that showing alone, the Commission may find that the public convenience and necessity require the same. In support of this position, they cite Beard

Truck Lines Co. Common Carrier Application, 34 M.C.C. 395; Hoover Motor Express Co., Inc. etc., 42 M.C.C. 315; Fish Common Carrier Application, 42 M.C.C. 695; Transamerican Van Service, Inc. 43 M.C.C. 815; and Crichton v. United States, D.C., 56 F.Supp. 876. Those cases do not support defendant's contention. In them, all that was held was that proof of long continued and successful operation should be taken into consideration in determining the present or future public convenience and necessity. The holding in those cases is tersely stated in the opinion in Beard Truck Lines Co. Common Carrier Application, supra, as follows: "Where, as here, the past operations have been conducted under the claims of 'grandfather' rights, openly and without subterfuge, we conclude that they should be given consideration in determining the issue of public convenience and necessity. *The weight to be accorded such operations, however, must be determined upon the basis of their relation to the other evidence of public convenience and necessity and cannot be considered controlling of such matter.*" (Emphasis added.) In other words, all that these cases hold is that prior successful operation under the "grandfather" clause adds a new element to be considered in reaching the necessary basic conclusion that the existing motor carriers are not reasonably capable of transporting the available traffic.

Defendants also urge that necessity for a finding upon this question is obviated by the recital in the Order that "we are not satisfied that such a need has been shown for applicant's service in the remainder of the territory sought. Such territory is adequately served by present carriers." This contention runs counter to the rule that basic or essential findings cannot be supplied by inference or implication. Wichita R. & Light Co. v. Public Utilities Commission of the State of Kansas, 260 U.S. 48, 58–59, 43 S.Ct. 51, 67 L. Ed. 124; Panama Refining Co. v. Ryan, 293 U.S. 388, 433, 55 S.Ct. 241, 79 L.Ed. 446; Atchison, Topeka & Santa Fe R. Co. v. United States, 295 U.S. 193, 201–202, 55 S.Ct. 748, 752, 79 L.Ed. 1382. In the latter case the Court said this: "This court will not search the record to ascertain whether, by use of what there may be found, general and ambiguous statements in the report intended to serve as findings may by construction be given a meaning sufficiently definite and certain to constitute a valid basis for the order."

The Commission's reluctance to make definite and detailed findings is strikingly apparent in this case. Actually the findings as to public convenience and necessity in the Report and Order are limited to the two following sentences: "This long continued and successful past operation, begun in 1928 and continued continuously, except for the interruptions described, strongly suggests public need which the service has been meeting. * * * In the circumstances, we conclude that application has shown the need for its operation in the transportation of general commodities except dangerous explosives, bulk liquids and commodities of unusual value between Portland, Salem, Seattle and Tacoma on the one hand, and, on the other, points in Idaho and in those portions of Oregon and Washington designated above and between points in Idaho and those in the indicated portions of Oregon and Washington." It was on the basis of these indefinite and rather feeble statements that this exceptionally broad certificate was granted. From a practical viewpoint it might well be said that Tocco received almost a roving commission within the area described. It is not the function of this Court to pass upon the wisdom of the Commission's Order. The breadth of the Order, however, makes imperative the inclusion in it of the basic findings upon which it rested if this Court is to ascertain whether or not the Order is in conformity with Congressional standards. The paucity of findings here makes pertinent the Supreme Court's observation in Beaumont, Sour Lake & Western R. Co. v. United States, supra, 282 U.S. 74 at page 86, 51 S. Ct. 1, at page 6, 75 L.Ed. 221: "The Commission's failure specifically to report the facts and give the reasons on which it concluded that under the circumstances the use of the average or group basis is justified leaves the parties in doubt as to a matter essential to the case, and imposes unnecessary work upon the courts called upon to consider the validity of the order. Complete statements by the Commission showing the grounds upon which its determinations rest are quite as necessary as are opinions of lower courts setting forth the reasons on which they base their decisions in cases analogous to this."

The most difficult task with which the Court has been confronted in this case has been to attempt to ascertain whether the Commission's Order was based upon all of the evidence submitted or whether it was based exclusively upon applicant's Exhibit No. 13. It is our belief, after careful examination of the Order, that the Commission considered only Exhibit No. 13. We express that belief raher hesitatingly. In this we are in the position similar to that of the Supreme Court in National Labor Relations Board v. Virginia Power Co., supra, 314 U.S. 469 at pages 479, 480, 62 S. Ct. 344, at page 349; 86 L.Ed. 348, in which the Court was unable to determine whether the Board based its conclusion upon the whole course of conduct revealed in the record or whether the Board "rested heavily upon findings with regard to the bulletin and speeches the adequacy of which we regard as doubtful." Concerning a similar situation in which the Supreme Court found itself, in Phelps Dodge Corporation v. National Labor Relations Board, 313 U.S. 177, 197, 61 S.Ct. 845, 853, 85 L.Ed. 1271, 133 A. L.R. 1217, the Court said: "Since Congress has defined the authority of the Board and the procedure by which it must be asserted and has charged the federal courts with the duty of reviewing the Board's orders (§ 10(e) and (f) [29 U.S. C.A. § 160(e, f)]); it will avoid needless litigation and make for effective and expeditious enforcement of the Board's order to require the Board to disclose the basis of its order."

The defendants insist that we must consider the entire record. They assert that for us to do otherwise would involve the court in the activity of probing the psychological processes of the Commission. That is precisely what the Court is attempting to avoid. The three cases the defendants cite in support of this contention (United States v. Chemical Foundation, 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131; Lewis v. United States, 279 U.S. 63, 73, 49 S.Ct. 257, 73 L.Ed. 615; Pacific States Box & Basket Co. v. White, 296 U. S. 176, 186, 56 S.Ct. 159, 80 L.Ed. 138, 101 A.L.R. 853), do not support the position defendants here take. They each involve merely the question of the presumption of regularity which attaches to the actions of public officials. Since we cannot be certain of the basis upon which the Commission acted, necessity requires that we remand it in order that the Commission, with certainty, may indicate the extent to which it considered the record.

However, if we are correct in our belief that the Commission's Order was based exclusively upon Exhibit No. 13, we have no hesitancy in deciding that that Exhibit contains no substantial evidence to support the conclusion of long continued and successful operations throughout the territory and between the points for which the certificate was granted. Our approach to this phase of the question is necessarily extremely limited. What public convenience and necessity require in the premises is a matter which Congress has confided to the judgment of the Commission and not of the Court's determination. Carolina Scenic Coach Lines v. United States, D.C., 56 F. Supp. 801, 803. The function of weighing the evidence is one peculiarly for the Commission and not for the Courts, and Orders of the Commission will not be set aside if they are supported by substantial evidence. Interstate Commerce Commission v. Union Pacific R. Co., 222 U.S. 541, 547, 32 S.Ct. 108, 56 L.Ed. 308. The decision of an administrative commission must have warrant in the record and a reasonable basis in the law. But the judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body. Dobson v. Commissioner of Internal Revenue, 320 U.S. 489, 501, 64 S.Ct. 239, 88 L.Ed. 248.

Space will not permit of a complete analysis of Exhibit No. 13 in this opinion. We feel that it should suffice to point out that Exhibit No. 13 discloses no operation between Tacoma, Washington, or Salem, Oregon, and any of the points or territory designated in the Order. It showed no operations between Seattle and Spokane. It showed only one shipment from Eastern Washington to Seattle. It showed only 9 shipments from Seattle to Idaho points and only 5 shipments from Seattle to Eastern Oregon points. During the entire 7½ year period covered by Exhibit No. 13, it showed no shipments from Idaho points to Seattle, no shipments from Eastern Washington points to Seattle and only 2 shipments from Oregon points to Seattle. Shipments to and from Portland were limited to the Milton and Freewater district in Oregon and to the Walla Walla and Yakima valley points in Eastern Washington. During the years 1936 to

1940, inclusive, the shipments from Portland to Idaho points consisted exclusively of 17 shipments of which 15 were to Lewiston. During the years 1936 to 1941, inclusive, shipments from Idaho to Portland consisted of 3 shipments from Lewiston in 1940 and 1 shipment from Lewiston in 1941. Surely this is not any substantial evidence of "long continued and successful past operation * * * conducted continuously which would 'strongly suggest a public need which the service had been meeting.'" The sporadic servicing which Exhibit No. 13 evidenced in most of the area covered by the certificate was not substantial proof upon which to base the conclusion of public convenience and necessity. The fact is the defendants have not attempted seriously to deny this conclusion in their oral arguments or in their briefs. They urge that we should supply that which is lacking by reference to the oral testimony of Tocco and the shippers. When they seek to have us do this, they ask us to do that which we cannot do. We do not know what weight, if any, the Commission accorded the testimony of Tocco and his shipper witnesses and we do not know why it gave credence to or withheld credence from such testimony. To pass upon the weight of that testimony would require the Court to test the credibility of the witnesses, to probe into the extent that their direct testimony was negatived by cross-examination and to evaluate that testimony as compared with the testimony offered by the protestants at the hearings. Those tasks lie exclusively within the province of the Commission.

This case has been pending before the Interstate Commerce Commission and before this Court since 1936. The disposition we are making of it will require further consideration by the Commission. This Court is anxious to assist in preventing any further unnecessary delay. Therefore, we have examined all of the evidence submitted by Tocco and his witnesses. In this examination, we have assumed arguendo that the Commission gave full weight and credit to all of Tocco's evidence. We are convinced that, even viewing the record in this posture, there is no substantial evidence sufficient to support the Commission's broad Order. Under the Order Tocco's authority to operate includes all of the State of Idaho, the south half of Eastern Washington and the north half of Eastern Oregon. As to a part of that area,

there is no testimony to support the Order. As to some of the remainder, there is no substantial evidence to support the Order. It is not the function of this Court to fix any limits beyond which the Commission cannot grant authority to operate. We are not now attempting so to do. We make this observation solely for the assistance of the Commission when it has the matter before it for reconsideration.

The Commission's Order of June 19, 1943, is set aside and the case is remanded to the Interstate Commerce Commission with instructions that the Commission shall take such action as to it shall seem proper and in accord with this opinion.