**ATLANTA–NEW ORLEANS MOTOR FREIGHT CO., Inc., Plaintiff,**

v.

**UNITED STATES of America,**

and

**The Interstate Commerce Commission, Defendants.**

**Civ. A. No. 7498.**

United States District Court
N. D. Georgia,
Atlanta Division.
Sept. 6, 1961.

Allan Watkins and Paul M. Daniell, Atlanta, Ga., for plaintiff.

Chas. D. Read, Jr., former U. S. Atty., Chas. L. Goodson, Atlanta, Ga., Robt. W. Ginnane, Gen. Counsel, Interstate Commerce Commission, Washington, D. C., for defendants.

Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for intervenor No. 1.

Moise, Post & Gardner, Atlanta, Ga., for intervenor No. 2.

Bishop & Morris, Birmingham, Ala., for intervenor No. 3.

Schwartz, Proctor, Bolinger & Austin, Jacksonville, Fla., for intervenor No. 4.

Before TUTTLE, Circuit Judge, and HOOPER and SLOAN, District Judges.

PER CURIAM:

This is an action brought by four motor carriers to set aside an order of the Interstate Commerce Commission granting a certificate of public convenience and necessity to M. R. & R. Trucking Company of Crestview, Florida (M. R. & R.), to extend its motor common carrier service from Atlanta, Georgia, to points affording connections with its previously authorized network of routes in northern Florida. The original plaintiff, Atlanta-New Orleans Motor Freight Co., Inc. (A.N.O.), and the intervening plaintiffs, St. Andrews Bay Transportation Company (Bay Lines), Georgia-Florida-Alabama Transportation Co., Inc. (GFA), and Ryder Truck Lines, Inc. (Ryder), all provide scheduled service, either directly or by interchange with connecting carriers, including M. R. & R., between the points involved in M. R. & R.'s proposed operations. They are fearful of losing a substantial proportion of this traffic if the grant of authority to M. R. & R. is upheld.

By application filed January 23, 1958, M. R. & R. sought an extension of its certificate of public convenience and necessity to authorize operations between Atlanta, Georgia and points within 15 miles thereof, on the one hand, and on the other, Malone, Florida and Bainbridge, Georgia, serving no intermediate points but connecting with previously authorized operations so as to provide direct single line service between Atlanta and territory already being served by M. R. & R. extending over a network of routes in northern Florida from Jacksonville, Florida, on the east, to Pensacola, Florida on the west, north to Dothan, Alabama, and including numerous points in northwestern Florida. M. R. & R. proposed to render direct daily over night service between Atlanta and all the involved Florida points except Jacksonville.

An extensive hearing on the application was had before a joint board at Tallahassee, Florida, during certain periods in March, April and May, 1958. The application was opposed by 10 motor carriers, including the original plaintiff and the intervenors. The applicant presented the testimony and exhibits of some sixty-six shipper and public witnesses, relating to twenty-two points within the area served by it. Ryder offered the testimony of eleven shipper witnesses, principally from Tallahassee.

The joint board was unable to agree on a decision, and the matter was referred to an examiner of the Commission who recommended the grant of authority to the applicant, substantially as sought by it. Seven of the ten protestant carriers thereupon filed exceptions with the Commission to the examiner's report, and the applicant replied.

Accepting, for the most part, the recommendation of the examiner, the Commission, Division 1, found that the op-

erations proposed by M. R. & R. were required by the present and future public convenience and necessity and that an appropriate certificate authorizing such operations should be granted, restricted, however, against "the transportation of any traffic originating at or destined to Dothan, Alabama, Jacksonville and Fort Walton Beach, or points within their respective commercial zones, or originating at or destined to Eglin Air Force Base, Florida."[1]

Cross-petitions for reconsideration were filed by several protestants and by the applicant, all of which were denied by the Commission by its order, entered January 5, 1961. Timely petitions for waiver of Rule 101(f) of the Commission's General Rules of Practice and for further hearing were filed by five of the protestants, including GFA and Ryder, and these were denied by the Commission by its order, entered approximately two months after issuance of the certificate of public convenience and necessity to M. R. & R. on February 16, 1961.

The main issues for our determination relate to whether the Commission's orders are based upon adequate findings and whether they, in turn, are supported by substantial evidence. Plaintiff and the supporting intervenors claim (1) that there was no substantial evidence of need for improved service between Atlanta and the northwest Florida area in general; (2) that there is a want of findings based upon substantial evidence with respect to the need for improved service between Atlanta and certain specific points within the involved area;[2]

(3) that there is a want of findings based upon substantial evidence to support the Commission's conclusion that the grant of authority should not have a "materially adverse effect" upon the pertinent operations of plaintiff carriers; and (4) that there is a lack of proof with respect to M. R. & R.'s ability to render the proposed service. Finally, GFA and Ryder urge that the Commission denied them due process of law by "ignoring and disregarding" their petitions for waiver of Rule 101(f) and for further hearing.

 Before discussing these contentions, brief reference should be made to the function of this Court in reviewing the Commission's orders. The principle that pertains was correctly stated in a recent case:

"The scope of the Court's authority on review is too basic to belabor. Consistently it has been held that the orders of the Commission should not be set aside, modified or disturbed on review by a Court if such orders lie within the scope of the Commission's statutory authority, if they are based upon adequate findings, and if they are supported by substantial evidence. [Citations omitted]. The Courts are not concerned with the correctness of the Commission's reasoning or with the consistency or inconsistency of decisions which it has rendered. [Citations omitted]. Nor is the review to determine how the public interest will best be served. This is the function of the Commission

---

1. M. R. & R. did not appeal these restrictions and thus they are not at issue here.
 One Commissioner, who filed a partial dissent, would have restricted transportation between Atlanta, on the one hand, and Tallahassee, Marianna, Monticello, Quincey, Greenville, Pensacola, Crestview, Pace, Cantonment and Panama City, Florida, on the other. He felt that M. R. & R. had not sufficiently demonstrated a need for improved service between these points.

2. A.N.O. disputes the need for improved service between Atlanta and Pensacola,

Gonzalez, Cantonment, Naval Air Station and Warrington, Florida. Bay Lines disputes the need for improved service between Atlanta and Chipley, Malone, Panama City and Marianna, Florida. GFA disputes the need for improved service between Atlanta and Gonzalez, Milton, Whiting Field, Hurlbut Field, Conley Field, Warrington, Fort Barrancas, Chipley, Malone, Marianna, Monticello, Quincey, Greenville, Pensacola, Crestview, Pace, Cantonment and Panama City, Florida. Ryder disputes the need for improved service between Atlanta and Bainbridge, Georgia.

and is made such by the terms of the statute. [Citation omitted]." Allen v. United States et al., D.C.S.D. Fla., 187 F.Supp. 625, 626–627.

With these limitations in mind, we conclude that the objections urged by plaintiffs are without merit and that the Commission's orders should be upheld.

■ With respect to the overall adequacy of existing service and need for M. R. & R.'s proposed service, the Commission found that for a large number of shippers in the area, the present service to and from Atlanta "falls substantially short of being reasonably adequate to their requirements," and that the present and future public convenience and necessity requires authorization of M. R. & R.'s proposed service. In our opinion, there is ample evidence in the record to support these findings.

Numerous shippers testified that they do not presently receive consistent overnight service to and from Atlanta and that they have lost considerable business as a result of their inability to obtain such service. The record reveals that these shippers now experience extremely inconsistent intransit times between Atlanta and the points currently being served by M. R. & R., ranging from one to eight days. They attributed to their not having dependable overnight motor carrier service from Atlanta their having to maintain larger and costlier inventories than otherwise would be required. One shipper discontinued purchasing supplies at Atlanta because of poor service, and others recalled frequent trips to Ryder's Tallahassee terminal to pick up their shipments because of that carrier's failure to make timely delivery. The record is replete with evidence of the consequences of disrupted production resulting from slow deliveries of needed parts and supplies. It shows that shortened transit times as proposed by M. R. & R. will permit increased sales and enable these shippers to meet competition more effectively.

Uniformly, the supporting shippers expressed dissatisfaction with existing service and professed a need for M. R. & R.'s proposed service. Numerous witnesses representing chambers of commerce in the area testified that the area is one experiencing population growth and anticipating further business expansion. Without exception, they declared that the overnight service sought to be rendered by M. R. & R. would be of benefit to the rates they represented.

Moreover, even some of the shippers offered by Ryder in rebuttal of the supporting shippers' testimony acknowledged that M. R. & R.'s proposed service would be desirable. The others, for the most part, testified that they were content with the existing service.

■ The fact that there was little or no direct testimony with respect to the need for improved service between Atlanta and certain named points in the involved area does not require the deletion of these points from the grant of authority. It is vital to remember that M. R. & R. was not merely seeking permission to serve these or other individual points—its request was to extend operations from Atlanta to *all* of the approximately 150 points within the disputed area. Considering the broad scope of this application, it could not reasonably be expected that the applicant would demonstrate need for improved service with specific reference to each and every one of the involved points.[3]

3. This case is thus unlike T.S.C. Motor Freight Lines et al. v. United States et al., D.C.S.D.Tex., 186 F.Supp. 777, and others of similar import which are relied upon by plaintiffs. In T.S.C. the applicant merely sought authority to operate between points A and C. The Commission's grant of authority to serve intermediate point B without any showing that this was required by the public convenience and necessity, was reversed by the court. There is a marked difference between requiring an applicant to prove need for improved service between point A and points B and C, and requiring an applicant to demonstrate, by direct testimony, need for improved service between point A, on the one hand, and approximately 150 different points on the other.

M. R. & R. did offer the testimony of sixty-six witnesses relating to twenty-two of the points which it sought to serve direct from Atlanta. Under the circumstances, however, it was inevitable that the evidence of need as to certain major points, such as Tallahassee, would be more impressive than the evidence with respect to other less substantial points such as Marianna; and it was likewise to be expected that there would be no direct testimony whatever as to other relatively minor communities in the area.

■ In our view, the evidence which was introduced was sufficient to establish a prima facie case of need for improved service between Atlanta and all points within the disputed area. This is to say that testimony as to specific need at a representative number of points in the area application was sufficient to support an inference of need at other points within the area as to which no specific testimony was offered. Of course, this inference was rebuttable, and it was in fact overcome in the case of Jacksonville, Florida and Dothan, Alabama, where the evidence clearly demonstrated that the public convenience and necessity did not require the proposed operations of the applicant. Under the circumstances, this was not an unreasonable burden to place on the protestants. It did not, as GFA contends, "overturn and ignore the complete burden of proof." On the contrary, it was an equitable distribution of the burden designed to avoid an unduly expensive and drawn out hearing on M. R. & R.'s application.

■ Since the applicant introduced abundant evidence demonstrating the inadequacy of existing service and need for improved service between Atlanta and numerous points in the area, we cannot say that the Commission acted arbitrarily or unreasonably in concluding that a similar situation exists between Atlanta and those points as to which neither M. R. & R. or the protestants offered direct testimony on the issues. It is not for this Court to "substitute its judg-

ment on the question whether the inference drawn is the right one or whether a different inference would be better supported. The test is reasonableness, not rightness." Davis, Administrative Law, 529.

■ For much the same reasons, there is no merit in Bay Line's contention that the Commission was required to make findings on all the issues relating specifically to Bay Lines and the points which it serves. Since the extension of routes was sought not only to serve such points but to serve all points in the area, the Commission was justified in expressing its ultimate findings in relation to the "total situation" existing in the disputed area. Cf. United States v. Detroit & Cleveland Navigation Co., 326 U.S. 236, 241, 66 S.Ct. 75, 90 L.Ed. 38. Moreover, the Commission did in fact devote a separate paragraph to an appraisal of each protestant carrier's current service between Atlanta and the particular localities which each carrier serves. In our opinion, it was unnecessary for the Commission to go further and make separate ultimate findings on the issues. The Commission's findings are sufficiently specific and definite so as to enable this Court "to know from a reading of the findings which facts were used by the Commission * * * for the conclusions which it reached." Inland Motor Freight et al. v. United States et al., D.C.E.D.Wash., 60 F.Supp. 520, 524. We have no difficulty discerning the path which the Commission followed. Colorado Interstate Gas Co. v. Federal Power Commission, 324 U.S. 581, 595, 65 S.Ct. 1019, 89 L.Ed. 1397.

Plaintiffs next contend that there was no substantial evidence to support the Commission's finding that:

"In view of the rapidly expanding economic growth of this territory, the authority granted in our findings should have no materially adverse effect upon those operations of existing carriers which are being per-

formed in a reasonably satisfactory manner."[4]

To be sure, there is evidence in the record that implementation of M. R. & R.'s proposed service may cause the plaintiffs to lose considerable traffic and the income derived therefrom. But this, in itself, has never been considered a violation of National Transportation Policy such as to afford grounds for refusing an applicant a certificate of public convenience and necessity. As the Court in Norfolk Southern Bus Corp. v. United States, D.C.E.D.Va., 96 F.Supp. 756, 761, affirmed mem., 340 U.S. 802, 71 S. Ct. 68, 95 L.Ed. 590, remarked:

> "Competition among public carriers may be in the public interest and the carrier first in business has no immunity against future competition. [Citations omitted]. Even though the resulting competition causes a decrease of revenue from one of the carriers, the public convenience and necessity may be served by the issuance of a certificate to·a new competitor."

Bearing in mind the abundance of testimony in the record to the effect that (1) plaintiffs' current service between Atlanta and the involved points is now seriously inadequate, and (2) that the area under consideration is experiencing rapid growth and anticipating further business expansion, it was reasonable for the Commission to conclude that if the plaintiffs improve the quality of their service they can compete effectively with M. R. & R. for old and new business in the area, thereby precluding M. R. & R.'s operations from having a "materially adverse effect" upon them. Of course, if plaintiffs fail to improve their service they must expect to suffer the consequences. The Commission's right to authorize competition in order to compel adequate service is now too

well established to permit serious debate. Davidson Transfer & Storage Co. v. United States, D.C.Pa., 42 F.Supp. 215.

With respect to GFA's contention that the above conclusion of the Commission relating to the effect of the award on plaintiffs' operations is not based on adequate findings of fact, it is enough to say that much less complete findings on this issue have survived judicial scrutiny in the past. Southern Kansas Greyhound Lines, Inc. v. United States, D.C.W.D.Mo., 134 F.Supp. 502.

With reference to M. R. & R.'s ability to render the proposed service, the Commission found that "there is no reason to believe that it will be unable to provide next day service between the points involved with reasonable consistency." In support of its contention that this finding is not based on substantial evidence, Ryder relies primarily on the testimony of one Atlanta shipper which indicates, in substance, that some shippers in the Atlanta area may be unable to meet M. R. & R.'s scheduled departure time from Atlanta. Balanced against this is the testimony of three supporting witnesses which shows that Atlanta shippers need and intend to use M. R. & R.'s proposed service. Since these witnesses were apparently familiar with M. R. & R.'s proposed schedule, their testimony can be taken as an implied acceptance of the feasibility of the schedule. Perhaps more significant, the testimony of M. R. & R.'s president indicates that this schedule is merely tentative and would be conformed, if necessary to meet the needs of Atlanta shippers. Again, we cannot say that there was an absence of such evidence as a reasonable mind might accept to support the Commission's conclusion. Consolidated Edison Co. of New York v. National Labor Relations Board, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126.

4. The effect of the award on the operations of existing carriers is an issue in this case because the National Transportation Policy requires the Commission "* * * to promote safe, adequate, economical, and efficient service and foster sound economic conditions in transportation and among the several carriers." 54 Stat. 899, 49 U.S.C.A. note preceding § 1.

■ Ryder also contends that the joint board and the Commission erred in refusing to permit it to introduce evidence in connection with the level of wages paid by M. R. & R. to some of its employees. Ryder argues that such evidence "has a definite bearing upon the fitness, willingness and ability of the applicant to operate into a high labor cost area such as Atlanta." Even assuming, however, that this evidence was relevant and should have been admitted, we do not think its admission would seriously detract from the substantiality of the evidence in the record manifesting M. R. & R.'s financial ability to effectuate the proposed operations. For this reason, the error, if any, was substantially harmless.

We come finally to the charge that GFA and Ryder were denied due process of law by the Commission's "ignoring and disregarding" their petitions for waiver of Rule 101(f) and for further hearing. Rule 101(f) prohibits successive petitions on the same ground.[5] The Commission, by its order of April 14, 1961, granted the petitions for waiver of this rule but denied the petitions for rehearing "for the reasons (1) that part of the evidence petitioners offer to adduce at a further hearing is already of record and the remainder, if proven, would not require a change in the decision already made, and (2) no sufficient cause appears for vacating the order of January 5, 1961, by the Commission, denying petitioners' prior petition for reconsideration or for reopening the proceeding for further hearing." Ryder claims that it has new evidence, consideration of which will result in a "substantially different finding by the Com-

mission," and that the Commission's issuance of one certificate "prior to completion of the administrative process is such a violation of its rights that the only adequate remedy is for the Court to reopen the case for further hearing."

■ It is well settled that the granting or denying of a petition for further hearing is discretionary with the Commission and its decision will not be disturbed upon judicial review unless there is a clear showing that this discretion has been abused. Interstate Commerce Commission v. Jersey City, 322 U.S. 503, 64 S.Ct. 1129, 88 L.Ed. 1420. The Commission's conclusion that the new evidence proffered by Ryder would not necessitate a different decision is clearly not so groundless as to amount to an abuse of discretion. Eck Miller Transfer Co. v. United States, D.C.W.D. Ky., 143 F.Supp. 409, 411. Nor was it inappropriate for the Commission, having previously considered and denied the petitions for reconsideration, to issue the certificate of public convenience and necessity to M. R. & R. pending its disposition of the petitions for waiver of Rule 101(f) and for further hearing. A petition for waiver is an extraordinary pleading, and its filing does not stay proceedings, within the contemplation of section 17(8) of the Interstate Commerce Act. [49 U.S.C.A. § 17(8)]. We fail to see how the intervening plaintiffs were prejudiced by the Commission's failure to act on the petitions for waiver and for rehearing until after issuance of the certificate to M. R. & R. Cf. St. Louis Southwestern R. Co. v. S. Samuels & Co., 5 Cir., 211 F. 588.

Judgment will be entered for the defendants.

5. "(f) *Successive petitions on same grounds, not entertained.* A successive petition under this section submitted by the same party or parties, and upon substantially the same grounds as a former petition, which has been considered and denied by the entire Commission will not be entertained." 49 C.F.R. 101(f).