**SWEDESBORO TRANSP. CO. v. UNITED STATES et al.**

No. 1550.

District Court, D. New Jersey.

Oct. 21, 1941.

William R. Smith, of Salem, N. J., for plaintiff.

Charles M. Phillips, U. S. Atty., of Trenton, N. J., and Allen Crenshaw, of Washington, D. C., for defendants.

Before BIGGS, Circuit Judge, and AVIS and FORMAN, District Judges.

PER CURIAM.

The complaint seeks to have this court set aside an order of the Interstate Com-

merce Commission in so far as it denies the issuance to Swedesboro Transportation Company of a permit to engage in business as a contract carrier of canned goods, pepper hulls and dried beans.

The Commision held that the transportation company was entitled to a common carrier certificate of convenience and necessity for all of the commodities listed below.[1] The plaintiff does not question the Commission's finding that the transportation by it of lime, fertilizer, lumber and coal, (items (c) to (f) as set up in the footnote, has been a common carrier operation, but it contends that it is entitled to the contract carrier permit to transport canned goods, pepper hulls and dried beans (items (a) and (b) and that it has not conducted operations in these commodities as a common carrier.

■ Assuming arguendo that the plaintiff is entitled as common carrier and contract carrier to certificate and permit when its operations are considered separately in the light of the respectively applicable sections, see 49 U.S.C.A. §§ 306 and 309(b), nonetheless the Commission must find first whether or not the plaintiff may maintain dual operations. See 49 U.S.C.A. § 310. The determination of whether the transportation by the plaintiff as both common and contract carrier is "over the same route or within the same territory" within the terms of the statute must be decided by the Commission.

■ The plaintiff alleges that the Commission's finding that it is a common carrier as to items (a) and (b) is erroneous in fact and not in accordance with law. This court has the power to determine whether the findings of the Commission as to the common carrier and contract statuses of the plaintiff are supported by evidence and are legally correct and to grant appropriate relief if they are not.

In determining the issues presented by the case at bar it is necessary of course to revert to the definitions contained in the act. See 49 U.S.C.A. § 303(a) (13) and (14). The changes made by the amendments of September 18, 1940 to subsections 14 and 15 do not alter the essential meaning of the subsections [2] for a holding-out has been an essential for the maintenance of common-carrier status for years. Subsection 15 defines a contract carrier as one who makes "individual" contracts with customers and is not a common carrier within the definition of subsection 14.

The definitions of the subsection are meaningless unless read against a background of fact. There are indeed extremes of facts which admit of no doubt as to the common or the contract status of a carrier. A classic example of contract carriage might be the transportation of explosives requiring special equipment for a single company. Common carriage might be the transportation of ordinary commodities in the ordinary way for a multitude of shippers though each entered into a special contract. In each case whether of common or contract carriage there is a contract. The nature of that contract is a most important element in determining whether the carriage under consideration be contract or common.

■ Applying what we have said to the facts of the case at bar we find that the plaintiff and its predecessors conducted the transportation in controversy for the Hurff Company and its predecessors and that the operations date from the latter part of 1934 when there was an oral understanding for

[1] (a) Canned goods and pepper hulls from Swedesboro, New Jersey, to Baltimore, Maryland, and points in Pennsylvania, New York, North Carolina, and Virginia and of returned, rejected, or damaged shipments on return;

(b) Dried beans from points in Erie, Genesee, Livingston, Monroe, Niagara, Ontario, Orleans, Wayne, and Yates Counties, New York, to Swedesboro, New Jersey;

(c) Lime from Chester Valley, Plymouth Meeting, and Bellefonte, Pennsylvania, to points in Gloucester, Cumberland, Salem, Cape May, and Camden Counties, New Jersey;

(d) Fertilizer from Philadelphia, Pennsylvania, and Baltimore and Salisbury, Maryland, to points in Cumberland and Gloucester Counties, New Jersey;

(e) Lumber from Philadelphia to Swedesboro; and

(f) Coal from points in Schuylkill County, Pennsylvania, to Swedesboro.

[2] The phrase "holds itself out" was substituted for the phrase "which undertakes" in subsection 14, and the words "special and" were stricken out of subsection 15 as modifying the phrase "individual contracts or agreements". The legislative history of the amendments is not helpful. See Hearings before the Committee on Interstate Commerce, U. S. Senate, 76th Cong., 1st. Sess., on S. 2009, April 3 to 14, 1939, pp. 57, 84, 85.

carriage. After the passage of the Motor Carrier Act, 49 U.S.C.A. § 301 et seq., the contract was reduced to writing to comply with the principles enunciated by the Commission in an ex parte proceeding entitled Contracts of Contract Carriers. 1 M.C.C. 628. The decision referred to requires a contract for contract carriage to impose bilateral obligations, viz., upon the shipper to ship by the carrier, and the carrier to carry, specified quantities of commodities within a stipulated period. The plaintiff's contract wth Hurff, however, is not in evidence. The only specific reference that we can find to its terms in the whole of the voluminous record which was before the Commission is in the petition for reopening and reconsideration of the case. This document, however, contains nothing more than "pertinent clauses" of an asserted bilateral contract between Hurff and Swedesboro and their predecessors. The contents of two of these clauses are as follows:

"That party of the first part (Hurff) agrees to tender for movement by party of the second part (Hunter) approximately 40 tons per month in the aggregate to one or more of the destinations named herein."

"That party of second part (Hunter) agrees to transport such goods as are tendered to it for interstate motor truck transportation within the area herein indicated, promptly and safely and to deliver the same to such consignees as may be designated from time to time within such area by party of first part (Hurff)."

It will be noted that though Hurff agrees to tender Swedesboro no less than approximately forty tons of freight for carriage a month, Swedesboro agrees to transport "such goods as are tendered to it" by the shipper for carriage. The record made before the Commission contains little which proves the extent of Swedesboro's business with Hurff or the background against which it was performed. The true contractual relationship between Swedesboro and Hurff cannot be ascertained from so little. The evidence does not even show for example how much the monthly quota of forty tons was exceeded by Hurff in any given period or if it was exceeded at all. Was there a bona fide bilateral contract? There are no appropriate findings by the Commission upon this, the primary phase of the case. Indeed, it is just to say that the Commission seems to have passed by this point without consideration. We are entitled to findings by the Commission, properly made and predicated upon adequate evidence. United States v. Chicago, Milwaukee, St. Paul & Pacific R. Co., 294 U.S. 499, 510, 511, 55 S.Ct. 462, 79 L.Ed. 1023; Florida v. United States (Brooks-Scanlon Corporation v. United States, Wilson Lumber Company of Florida v. United States), 282 U.S. 194, 51 S.Ct. 119, 75 L.Ed. 291.

Accordingly, the order of the Commission in so far as it refuses a contract carrier permit to Swedesboro is annulled and set aside.