LANG TRANSP. CORPORATION et al. v. UNITED STATES et al. (CANTLAY & TANZOLA, Inc., Intervener).

Civil Action No. 6403.

District Court, S. D. California, Central Division.

Jan. 5, 1948.

Berol & Handler, by Edward M. Berol and Marvin Handler, all of San Francisco, Cal., for Lang Transp. Corporation, plaintiff.

W. Wallace Wilhite, of San Francisco, Cal., for Pacific Southwest R. Ass'n, plain-

tiff, and for Union Pac. R. Co., amicus curiae.

Harold G. Hernley, of Washington, D. C., for other plaintiffs.

Wendell Berge, Asst. Atty. Gen., Edward Dumbauld, Sp. Asst. to Atty. Gen., and James M. Carter, U. S. Atty., by Ronald Walker and Robert Komins, Asst. U. S. Attys., all of Los Angeles, Cal., for the United States, defendant.

Daniel H. Kunkel, of Washington, D. C., for Interstate Commerce Commission, Defendant.

Phil Jacobson, of Los Angeles, Cal., for Cantlay & Tanzola, Inc., Intervener.

Before ALBERT LEE STEPHENS, Circuit Judge, and HARRISON, and J. F. T. O'CONNOR, District Judges.

J. F. T. O'CONNOR, District Judge.

The intervener, Cantlay & Tanzola, Inc., a California corporation, filed on January 30, 1941, an amended application with the Interstate Commerce Commission, requesting a Certificate of Public Convenience and Necessity. The petition requested the Commission to grant the intervener the right to operate as a common carrier by motor vehicle over irregular routes in the transportation of petroleum and petroleum products in bulk, with certain exceptions. The route requested was from points in Ventura, Los Angeles and Orange Counties, California, to points in Nye, Esmeralda and Clark Counties, Nevada, and Washington, Kane, Iron and Garfield Counties, Utah, and return with rejected or contaminated shipments of such commodities, traversing Arizona for operating convenience when necessary.

The plaintiff, Lang Transportation Corporation, a California corporation, common carrier by motor vehicle, was issued a Certificate of Public Convenience and Necessity dated August 10, 1943, to transport petroleum and petroleum products to the same general territory which the Commission had authorized the intervener to serve by Order of April 8, 1946.

By reason of acquiring several other carriers prior to or about the time that intervener entered the field, the plaintiff (Lang) enjoyed a virtual monopoly of the transportation of petroleum products by motor vehicle in interstate commerce within the territory involved.

The plaintiff Lang, and others, hereinafter sometimes designated as protestants, intervened before the Interstate Commerce Commission in opposition to said application. The Interstate Commerce Commission will be referred to as the Commission.

Subsequent to the filing of the application of Cantlay & Tanzola, Inc., as amended, on or about January 30, 1941, hearings were held in Los Angeles, California, on August 7 and 8, 1941, before an Examiner of the Commission, and thereafter the proceeding was referred by the Commission to an Examiner for completion of the hearing and recommendation of an appropriate order. Pursuant to such reference, a further hearing was held and completed on April 23, 1942, at Las Vegas, Nevada. By a report and order recommended by F. Roy Linn, Examiner, served on or about July 23, 1942, the said Examiner found that public convenience and necessity did not require the service for which authority was requested by Cantlay & Tanzola, Inc., and recommended that the application be denied.

Thereupon, Cantlay & Tanzola, Inc., filed exceptions to said report and order to which plaintiffs and others replied, and by a report of the Commission, Division 5 thereof, decided on March 4, 1943 (42 N. C.C. 835), the Commission denied the application, Commissioner Lee dissenting.

Intervener filed petition for reconsideration, to which plaintiffs herein and others replied, and the Commission issued an order on reconsideration, Division 5, dated November 30, 1943 (43 M.C.C. 844), reversing itself and granted the application, Commissioner Patterson dissenting.

Thereafter, upon petition by plaintiff herein, and others, the proceeding was reopened by order of the Commission dated May 22, 1944, and the application assigned for further hearing and the recommendation of an appropriate order. Further hearings were held in Los Angeles, California on November 15, 16, 17 and 18,

1944, before Examiner F. Roy Linn. The Examiner, on or about May 4, 1945, served his report on further hearing, in which he again recommended denial of the application. Exceptions were filed by Cantlay & Tanzola, Inc., to the order recommended by the Examiner on further hearing, and certain of the protestants including the plaintiffs, replied. (Cantlay and Tanzola, Inc., had been furnishing such service under temporary authority issued by the Commission under Sec. 210a of the Motor Carrier Act of 1935, 49 U.S.C.A. § 310a.)

Thereafter the Commission, under Sec. 207(a) of the Federal Motor Carrier Act of 1935, Title 49 U.S.C.A. § 307(a),[1] granted the application as prayed for by report and order on further hearing of Division 5 of the said Commission, dated April 8, 1946.[2]

■ Under Sec. 207(a) of the Motor Carrier Act of 1935, Title 49 U.S.C.A. § 307(a), the nature and extent of the Commission's authority has been the subject of numerous decisions. The law thereon is settled that the issue of public convenience and necessity is a matter peculiarly requiring the exercise of the Commission's expert judgment in the field of transportation.[3]

■ In a proceeding under Section 207(a) of the Act, Title 49 U.S.C.A. § 307(a), supra, to determine what transportation services are needed by the public (unlike a proceeding under the "grandfather clause" of Section 206 of the Act, Title 49 U.S.C.A. § 306), the Commission is not merely making a finding with respect to the existence of certain facts, but is exercising an expert judgment or discretion with respect to a transportation question.[4]

[1] Sec. 207(a) of the Motor Carrier Act of 1935, Title 49 U.S.C.A. § 307(a): "Subject to section 210 (Title 49 U.S.C.A. § 310) a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing and able properly to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied; Provided, however, That no such certificate shall be issued to any common carrier of passengers by motor vehicle for operations over other than a regular route or routes, and between fixed termini. except as such carriers may be authorized to engage in special or charter operations."

[2] No. NC 70662 (Sub. No. 5) Cantlay & Tanzola. Inc., Extension Las Vegas and St. George (submitted August 13, 1945 —decided April 8, 1946). On further hearing findings in prior report on reconsideration, 43 M.C.C. 814, affirmed. Public convenience and necessity found to require operation by applicant as a common carrier by motor vehicle, over irregular routes, of petroleum and petroleum products, in bulk, in tank trucks, except asphalt and heavy oils requiring special heated equipment, from points in Ventura, Los Angeles and Orange Counties, Calif., to points in Esmeralda, Nye and Clark Counties, Nev., and points in Washington, Kane, Iron and Garfield Counties, Utah, and the return of rejected or contaminated shipments of such commodities. Issuance of a certificate approved upon compliance by applicant with certain conditions. Other prior report, 42 M.C.C. 835.

[3] New York Central Securities Co. v. United States, 287 U.S. 12, 25, 53 S.Ct. 45, 77 L.Ed. 138; United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 482, 490, 62 S.Ct. 722, 86 L.Ed. 971. See also Texas & Pacific R. Co. v. Gulf C. & S. F. R. Co., 270 U.S. 266, 273, 46 S.Ct. 263, 76 L.Ed. 578; Chesapeake & Ohio R. Co. v. United States, 283 U.S. 35, 51 S.Ct. 337, 75 L.Ed. 824; Colorado v. United States, 271 U.S. 153, 168, 46 S.Ct. 452, 70 L.Ed. 878.

[4] Sec. 207(a) of the Act, 49 U.S.C.A. § 307(a), under which the Commission's decisions on the question of "public convenience and necessity" have been upheld by the Supreme Court include: North Coast Transportation Co. v. United States, D.C.N.D.Cal., 1944, 54 F. Supp. 446, affirmed 323 U.S. 668, 65 S. Ct. 111, 89 L.Ed. 647; Carolina Scenic Coach Lines v. United States, D.C.W.D. N.C., 1944, 56 F.Supp. 801, affirmed 323 U.S. 678, 65 S.Ct. 277, 89 L.Ed. 550; Crichton v. United States, D.C.S.D.N.Y., 1944. 56 F.Supp. 876, affirmed 323 U.S. 684, 65 S.Ct. 559, 89 L.Ed. 554. In the foregoing cases the Commission's decision granting operating authority was upheld by the courts. In North-South Freightways v. United States, D.C.S.D. N.Y., 1944, 55 F.Supp. 696, a decision

Thereafter plaintiff (Lang) under date of June 15, 1946, filed its petition for reconsideration, rehearing or oral argument; and plaintiff Pacific Southwest Railroad Association on June 13, 1946, filed its petition for reconsideration, rehearing, or oral argument, to both of which petitions Cantlay & Tanzola, Inc., replied, and, by order dated January 6, 1947, the Commission denied, without opinion, the said petitions for reconsideration, rehearing or oral argument.

In view of the foregoing proceedings before the Commission intermittently between January 30, 1941 and January 6, 1947, the taking of over thirteen hundred pages of testimony and the introduction of exhibits, which have been examined, it is patent that the Commission, in ultimately granting its certificate of public convenience and necessity to intervener by the aforesaid report and order of April 8, 1946, acted only after exercising the most considered and matured judgment over an extended period of time, and under the vicissitudes of changing conditions.

■ Aggrieved by the ruling (report and order) of the Commission, of April 8, 1946, supra, the Lang Transportation Corporation filed suit in the Federal District Court for the Southern District of California, Central Division, on February 6, 1947, against the United States of America and the Interstate Commerce Commission, invoking jurisdiction of this court under the provisions of Title 28 U.S.C.A. §§ 41(28) and 43–48 inc., Act October 22, 1913, 38 Stat. 219, Urgent Deficiencies Act [5]; and prayed that a court, constituted as required by the Act of October 22, 1913, U.S.C.A., Title 28, § 47, be convened; and, inter alia, that:

(1) The report, findings and order in the foregoing proceedings before the Interstate Commerce Commission, insofar as the same granted to intervener any operative rights whatever, be set side and annulled by this court; or

(2) In the alternative, that the Commission be directed and required to reopen said proceedings for the taking of further testimony under present day peacetime conditions; and

(3) That a temporary or interlocutory injunction be entered herein restraining the Interstate Commerce Commission from issuing to intervener a certificate of public convenience for the purpose heretofore stated.

An amended complaint was subsequently filed, by order of this court, on March 26, 1947, joining the Pacific Southwest Railroad Association, an unincorporated association, as a party plaintiff.[6]

---

of the Commission denying operating authority under Section 207 of the Act was upheld.

[5] Suits under the Urgent Deficiencies Act to set aside orders of the Interstate Commerce Commission are proceedings for judicial review upon the record before the Commission and are not trials de novo; hence evidence aliunde or dehors the record is inadmissible in the Federal District Court. United States v. Louisville & Nashville R. Co., 1914, 235 U.S. 314, 35 S.Ct. 113, 59 L.Ed. 245; Tagg Brothers & Moorehead v. United States, 1930, 280 U.S. 420, 443–5, 50 S. Ct. 220, 74 L.Ed. 524; Acker v. United States, 1936, 298 U.S. 426, 434, 56 S. Ct. 824, 80 L.Ed. 1257; National Broadcasting Co. v. United States, 1943, 319 U. S. 190, 227, 63 S.Ct. 997, 87 L.Ed. 1344. There is an exception to this rule where a claim of confiscation is made in a rate case; but even there correct practice requires that the evidence should be submitted in the first instance to the Commission. Manufacturer's Railway Co. v.

United States, 1918, 246 U.S. 457, 489, 490, 38 S.Ct. 383, 62 L.Ed. 831; St. Joseph Stockyards Co. v. United States, 1936, 298 U.S. 38, 51–52, 56 S.Ct. 720, 80 L.Ed. 1033; Baltimore & Ohio R. Co. v. United States, 1936, 298 U.S. 349, 363, 369, 56 S.Ct. 797, 80 L.Ed. 1209. But a claim of constitutional rights cannot be raised as a subterfuge where the actual question involved is merely whether regulatory authority has been validly exercised. Baltimore & Ohio R. Co. v. United States, 1939, 305 U.S. 507, 526, 59 S. Ct. 284, 83 L.Ed. 318; Trans-American-Freight Lines v. United States, D.C.Del., 1943, 51 F.Supp. 405, 409.

[6] According to the allegation of the amended complaint: Pacific Southwest Railroad Association is a voluntary association, having headquarters and principal offices in San Francisco, Calif. and is composed of Class I railroads and shortline railroads serving the states of the Pacific Southwest, including California, Nevada, and Utah; and is the duly authorized representative of such rail-

■ This court is holding that the Lang Transportation Corporation has standing to sue under the authority of Alton Railroad Co. v. United States, 1942, 315 U.S. 15, 62 S.Ct. 432, 86 L.Ed. 586; and the jurisdiction of this court is derived from Title 28 U.S.C.A. § 41(28), 43–48; but it is not passing on the capacity of the Pacific Southwest Railroad Association to bring suit.

The plaintiffs have alleged in their aforementioned amended complaint that the operations of intervener under the report and order of April 8, 1946, supra, if allowed to stand, "will be directly competitive with the operations of Lang Transportation Corporation, and with the operations of the Union Pacific Railroad Company and its connecting rail carriers * * * to the irreparable loss, damage and injury to said Lang Transportation Corporation and the said Union Pacific Railroad Company"; and have set forth therein a number of grounds upon which they contend the report and order of the Commission of April 8, 1946 (supra), should be reversed by this court; and, while it is not deemed necessary to set forth all of the plaintiffs' points, in extenso, herein, some of the plaintiffs' major contentions will be paraphrased as follows:

(A) That the record in the proceedings before the Commission was closed before V-E day, and, therefore, was based upon wartime conditions;

(B) That, particularly by reason of the decline in traffic caused by termination of hostilities of World War II, it would be unfair and destructive to inflict a competitor upon existing motor and rail facilities;

(C) That the report and order of the Commission, dated April 8, 1946, was based upon a stale record so as not to reflect in any respect the facts and conditions existing at the time of the entry thereof;

(D) That the Commission misconceived its statutory powers in that it erroneously and improperly disregarded the burden of proof;

(E) That the Commission, in its decisions, including one of the decisions in the instant matter, had consistently followed the principle that, in the absence of evidence of specific deficiencies in existing service, or of a showing of benefits from a new service, existing carriers should be accorded the right to transport all traffic which they can handle adequately, efficiently and economically in the territory served by them;

(F) That the Commission misconceived its statutory powers and exceeded its jurisdiction and authority, and acted arbitrarily, capriciously and unreasonably, in that it erroneously and improperly granted the application, even though it found that existing facilities were adequate and that the Lang Transportation Corporation was rendering a complete, efficient and adequate service;

(G) That the report and order of the Commission, dated April 8, 1946, was unreasonable, without evidence to support it, and contrary to the evidence; and,

(H) That the conclusions of the Commission are not supported by the findings, particularly with respect to the findings that public convenience and necessity require the proposed service, when, as a matter of fact, the Commission finds that existing carriers are adequately equipped, able and willing to serve the needs of all the shippers within the territory involved in an adequate and efficient manner.

(Note: The foregoing charges will be answered herein seriatim, infra.)

To the foregoing amended complaint, the United States of America filed its answer on April 9, 1947; the Interstate Commerce Commission filed its answer on April 14, 1947; and intervener, given permission to intervene by order of court filed July 3, 1947, likewise filed its answer thereto, as an intervener herein on July 3, 1947.

roads including Union Pacific Railroad Co. Each member of plaintiff is a railroad operating in interstate commerce, and subject to the Interstate Commerce Act as amended. The Union Pacific Railroad Co., as a common carrier railroad, directly serves points and places in the Los Angeles Basin area and in Southern Nevada and Southern Utah encompassed by the application of intervener. (Denied by the answers of intervener, The United States of America and the Interstate Commerce Commission.)

924

The plaintiffs herein have been quite profuse in citing authorities of the Interstate Commerce Commission indicating the rules of procedure, practice and of evidence by which it was bound with respect to proceedings before it in formulating its opinions,[7] with which this court is generally in agreement, but the plaintiffs herein apparently lose sight of the fact that these citations are not particularly helpful to this court at this time in that they are intended for the guidance of the Commission in its hearings, and after a decision has been rendered by the Commission in a particular case, this court cannot except under conditions to be hereinafter enumerated, usurp the administrative functions of the Commission by setting aside its lawful administrative orders upon its conception of whether or not the administrative power has been wisely exercised.

This court is likewise in agreement with the cases cited by the plaintiffs to the effect that "a full and fair hearing before the Commission is a fundamental requirement of the Interstate Commerce Commission Act; and, where a hearing is denied by the Commission, or where the hearing granted is inadequate or manifestly unfair, the Commission's order is void" citing Interstate Commerce Commission v. Louisville & Nashville R. Co., 227 U.S. 88, 33 S.Ct. 185, 57 L.Ed. 431; Atchison, Topeka & Santa Fe R. Co. v. United States, 284 U.S. 248, 52 S.Ct. 146, 76 L.Ed. 273; Erie Railroad Co. v. United States, D.C., 59 F. Supp. 748; that

"Where the hearing accorded related to conditions which had been radically changed, and a hearing, suitably requested, which would have permitted the presentation of evidence relating to existing conditions, was denied, such a denial would not be within the permitted range of the Commission's discretion, but would be a denial of that right and cannot be sustained." (Citing Atchison, Topeka & Santa Fe R. Co. et al. v. United States et al., 1932, 284 U.S. 248, 52 S.Ct. 146, 76 L.Ed. 273); supra, and that

"Orders of the Interstate Commerce Commission which are contrary to and without adequate support in the evidence are void, and have been consistently set

---

[7] In proceedings before the Interstate Commerce Commission (a) on applications for certificates of public convenience and necessity, the burden of proof is upon applicant to show affirmatively that the proposed operation would serve a useful public purpose responsive to a public demand or need, and that the public need cannot or will not be met as well by the existing carriers, citing Keele Common Carrier Application, 30 I.C.C. Motor Carrier Cases 173, at page 181; Georgia Motor Express Application, 1 M.C.C. 114; 10 M.C.C. 159, 164, Motor application;

(b) Public convenience and necessity should be interpreted so as to secure for the Nation the broad aims of the Interstate Commerce Act of 1940. One of these aims is the fostering of sound economic conditions in transportation and among the several carriers, citing the Act of Sept. 18, 1940, c. 722, Title I, Sec. 1, 54 Stat. 919, U.S.C.A. Title 49, § 301 et seq.; Interstate Commerce Commission v. Parker, 326 U.S. 60, 69, 65 S.Ct. 1490, 89 L.Ed. 2051, 2061;

(c) In furtherance of this aim of fostering sound economic conditions in transportation, the Interstate Commerce Commission has adopted a positive policy, expressed in many of its decisions, that existing carriers should normally be accorded the right to transport all traffic which they can handle adequately, efficiently and economically in the territory served by them, as against any new operator seeking to enter the field in competition with them, citing C. & D. Oil Company Application, 1 M.C.C. 329, 332; Clark Application, 1 M.C.C. 445, 448; Mid-Western Motor Freight Tariff Bureau v. Eicholz, 4 M.C.C. 755, 773; Georgia Motor Express Application, 10 M.C.C. 159, 164; Cater's Motor Freight System, Inc. Extension, 10 M.C.C. 292; Keele Common Carrier Application, 30 M.C.C. 173, 181; Deaton Truck Lines Application, 32 M.C.C. 89, 104; Worm Application, 32 M.C.C. 641, 644; H & B Trucking Co. Application, 33 M.C.C. 211, 215; Bailey Application, 33 M.C.C. 537, 541; Cohen Application; 44 M.C.C. 854, printed in full in 5 C.C.H. Federal Carriers' Cases Par. 31,017; War Eagle Oil Company Application, 5 Federal Carriers' Cases Par. 31,222; Inland Motor Freight v. United States, D.C., 60 F.Supp. 520;

(d) Public convenience and necessity refer to a demand that is reasonably constant and determinable rather than to the extraordinary peaks that may arise in the course of any business, citing Cater's Motor Freight System, Inc. Ext., 10 M. C.C. 292, 294.

aside by the courts," citing Eastern Central Motor Carriers Ass'n. v. United States, 321 U.S. 194, 64 S.Ct. 499, 88 L.Ed. 668; Florida v. United States, 282 U.S. 194, 51 S.Ct. 119, 75 L.Ed. 291; Baltimore & Ohio R. Co. v. United States, 264 U.S. 258, 44 S.Ct. 317, 68 L.Ed. 667; Inland Motor Freight v. United States, D.C., 60 F.Supp., 520; Erie Ry. Co. v. United States, D.C., 59 F. Supp. 748; Swedesboro Transportation Co. v. United States, D.C., 45 F.Supp. 33; Administrative Procedure Act of 1946, 5 U.S. C.A. § 1009(e); but it is not believed that this is the situation in the instant case.

The plaintiffs herein have likewise called this court's attention to the vacillating position of the Commission in its two prior findings and reports of March 4, 1943, and November 30, 1943, respectively, finally leading up to the findings, report and order of April 8, 1946, and, while reference has heretofore been made in this opinion to the said prior findings, rulings and reports of the Interstate Commerce Commission eventually resulting in the said report and order of April 8, 1946, supra, this has been done for the exclusive purpose of showing the care and consideration given to this matter by the Commission, but this judicial review extends only to the Commission's definitive action resulting in the report and order of April 8, 1946, and not to the preliminary stages or preparatory steps. Baltimore & Ohio R. Co. v. United States, 1936, 298 U.S. 349, 370-1, 56 S.Ct. 797, 80 L.Ed. 1209; Federal Radio Commission v. Nelson Brothers, 1933, 289 U.S. 266, 285, 286, 53 S.Ct. 627, 77 L.Ed. 1166, 89 A.L.R. 406.

Plaintiffs herein have likewise objected to the fact that the Commission has vacillated in its past findings, prior to the report and order of April 8, 1946, but, as pointed out in Watson Bros. Trans. Co. v. United States, D.C., 59 F.Supp. 762, one hundred per cent consistency in the findings of various trial examiners and commissioners is scarcely to be expected in such prolonged and extended proceedings. The District Court has nothing to do with the consistency or inconsistency of the Interstate Commerce Commission decisions, Bondurant v. United States, D.C., 50 F.Supp. 704; and if the present order and report of April 8, 1946, is proper, this court should not be concerned with its past history.

It has been held consistently that rehearings before Administrative bodies are addressed to their own discretion. Interstate Commerce Commission v. Jersey City, 322 U.S. 503, 515, 64 S.Ct. 1129, 88 L.Ed. 1420 (United States v. Pierce Auto Lines, 327 U.S. 515, 535, 66 S.Ct. 687, 90 L.Ed. 821. The Supreme Court has frequently held that the granting or denying of a petition for rehearing before the Commission is a matter within the sound discretion of the Commission, and its action thereon cannot be reversed except upon the clearest showing of abuse of discretion. United States v. Northern Pacific R. Co., 288 U.S. 490, 494, 53 S.Ct. 406, 77 L.Ed. 914.

This hearing is only for the purpose of determining whether or not the Interstate Commerce Commission, in the instant proceedings, exceeded its statutory authority or the Constitution of the United States, which would include correlatively: (a) A denial of a full and fair hearing; (b) findings contrary to the evidence; (c) lack of basic or essential findings; and (d) errors of law. Interstate Commerce Commission v. Louisville & Nashville Railroad Co., 1913, 227 U.S. 88, 33 S.Ct. 185, 57 L. Ed. 431.

Certain postulates will be laid down here as a basis for the ultimate decision in this case:

(1) It is not the province of a three judge court to weigh the evidence before the Commission[8]; and, if the findings of the

8 It is well settled, under established principles of judicial review, that it is the task of the Commission, and not of the courts, to pass upon the weight and credibility of evidence, United States v. Carolina Freight Carriers Corp., 315 U. S. 475, 484, 490, 62 S.Ct. 722, 86 L.Ed. 971; United States v. Pan American Petroleum, 304 U.S. 156, 158, 58 S.Ct. 771, 82 L.Ed. 1262; Baltimore & O. R. Co. v. United States, 298 U.S. 349, 359, 56 S. Ct. 797, 80 L.Ed. 1209; Merchants Warehouse Co. v. United States, 283 U.S. 501, 508, 51 S.Ct. 505, 75 L.Ed. 1227; Chicago R. I. & P. R. Co. v. United States, 274 U.S. 29, 33, 34, 47 S.Ct. 486, 71 L.

Commission are supported by the evidence, the district court should decline to substitute inferences of its own for those drawn by the Commission (Chicago, St. Paul & C. R. Co. v. United States, 1944, 322 U.S. 1, 3, 64 S.Ct. 842, 88 L.Ed. 1093; Rochester Telephone Corp. v. United States, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147);

 (2) The report and order of the Commission will not be annulled nor enjoined by a district court unless it exceeds the statutory authority of the Commission or violates the federal constitution (Jack Cole Co. v. I. C. C., D.C., 59 F.Supp. 10, affirmed 324 U.S. 822, 887, 65 S.Ct. 680, 89 L.Ed. 1392; Watson Bros. Transp. Co. v. United States, D.C., 59 F.Supp. 762);

 (3) The burden of showing such an invalidating infirmity in these challenged orders in the federal district court rests upon the plaintiffs herein suing to enjoin the report and order of April 8, 1946 (Watson Bros. Transp. Co. v. United States, supra);

 (4) In order to obtain an interlocutory restraining order the plaintiffs must show irreparable damage (United States v. Baltimore & O. R. Co., 225 U.S. 306, 32 S.Ct. 817, 56 L.Ed. 1100; Galveston & O. R. Co. v. United States, D.C., 222 F. 175);

 (5) Federal Statute, 24 Stat. 379, 49 U.S.C.A. § 1 et seq., gives prima facie effect to the findings of the Interstate Commerce Commission (Meeker v. Lehigh Valley R. Co., 1915, 236 U.S. 434, 439, 35 S.Ct. 337, 59 L.Ed. 659, Ann.Cas.1916B, 691);

 (6) The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body (Rochester Telephone Corp. v. United States, 1939, 307 U.S. 125, 146, 59 S.Ct. 754, 83 L.Ed. 1147);

 The authorities are clear that the judiciary cannot properly interfere with executive action when the executive officer is authorized to exercise his judgment or discretion; it is only in cases where the executive officer has to perform a purely ministerial act that the courts either by a proceeding in mandamus or injunction, can direct or control the performance of such ministerial act. Gaines v. Thompson, 1869, 7 Wall. 347, 19 L.Ed. 62; Dudley v. James, C.C.Ky., 1897, 83 F. 345. They cannot, under the guise of exerting judicial power, usurp merely administrative functions by setting aside a lawful administrative order of the Interstate Commerce Commission upon their own conception of whether the administrative power has been wisely exercised. Interstate Commerce Commission v. Illinois C. R. Co., 1910, 215 U.S. 452, 30 S.Ct. 155, 54 L.Ed. 280.

 A classical formulation of the proper scope of judicial review of orders of the Interstate Commerce Commission was made in Interstate Commerce Commission v. Union Pacific Railroad Co., 1912, 222 U.S. 541, 547, 32 S.Ct. 108, 56 L.Ed. 308. In a long and unbroken line of cases,[9] the Supreme Court has steadfastly adhered to the principles there set forth. The rule thus established may be summarized to the effect that the courts will uphold the Commission's order if it is based upon substantial evidence, and is not arbitrary nor erroneous as a matter of law.

 To understand the wide range of discretionary authority vested in the Interstate Commerce Commission when acting administratively, see United States v. Detroit & Cleveland Navigation Co., 1943, 326 U.S. 236, 240, 241, 66 S.Ct. 75, 77, 90 L.Ed. 38, where the Supreme Court has pronounced the rule to be as follows:

Ed. 911; Transamerican Freight Lines v. United States, D.C.Del., 1943, 51 F. Supp. 405, 410.

9 O'Keefe v. United States, 1916, 240 U.S. 294, 303, 36 S.Ct. 313, 60 L.Ed. 651; United States v. Carolina Freight Carriers Corp., 1942, 315 U.S. 475, 482, 490, 62 S.Ct. 722, 86 L.Ed. 971; Alton R. Co. v. United States, 1942, 315 U.S. 15, 23, 62 S.Ct. 432, 86 L.Ed. 586; I.C.C. v. Hoboken Manufacturers' R. Co., 1943, 320 U.S. 368, 378, 64 S.Ct. 159, 88 L.Ed. 107; Gray v. Powell, 1941, 314 U.S. 402, 411, 62 S.Ct. 326, 86 L.Ed. 301; Rochester Telephone Corp. v. United States, 1939, 307 U.S. 125, 146, 59 S.Ct. 754, 83 L. Ed. 1147; Mississippi Valley Barge Line Co. v. United States, 1934, 292 U.S. 282, 286-7, 54 S.Ct. 692, 78 L.Ed. 1260.

"If the Commission were required to deny these applications unless it found an actual inability on the part of existing carriers to acquire the facilities necessary for future transportation needs, a limitation would be imposed on the power of the Commission which is not found in the Act.

"The Commission is the guardian of the public interest in determining whether certificates of convenience and necessity shall be granted. For the performance of that function the Commission has been entrusted with a wide range of discretionary authority. Interstate Commerce Commission v. Parker, 326 U.S. 60, 65 S.Ct. 1490 [89 L. Ed. 2051]. *Its function is not only to appraise the facts and to draw inferences from them but also to bring to bear upon the problem an expert judgment and to determine from its analysis of the total situation on which side of the controversy the public interest lies.*" (Emphasis supplied)

Likewise, in American Trucking Association, Inc., v. United States, 1945, 326 U.S. 77, 86, 65 S.Ct. 1499, 1503, 89 L.Ed. 2065, the Court reiterated that it was for the Commission to "weigh the advantages" of granting an application against the injury arising therefrom in order "to determine where public convenience and necessity lies." The difficult task of appraising the conflicting interests involved is to be performed by the Commission after the receipt "of all available material evidence as to the probable effect of the proposals on the operations both of the proponents of and the protestants against the applications." The Commission must give appropriate consideration to the consequences to the public of the proposals involved, as well as their bearing on the transportation agencies concerned. "The discretion of the Commission should be exercised after consideration of all relevant information."

In Chesapeake & Ohio R. Co. v. United States, 1931, 283 U.S. 35, 42, 51 S.Ct. 337, 339, 75 L.Ed. 824, a leading case with respect to the nature of the findings to be made by the Commission in a case involving determination of public convenience and necessity, the Court emphasized that:

"There is no specification of the considerations by which the Commission is to be governed in determining whether the public convenience and necessity require the proposed construction. Under the Act it was the duty of the Commission to find the facts and, in the exercise of a reasonable judgment, to determine that question." Texas & Pac. R. Co. v. Gulf, C. & S. F. R. Co., 270 U.S. 266, 273, 46 S.Ct. 263, 70 L.Ed. 578.

The Chesapeake & Ohio case, involving a certificate of public convenience and necessity in the field of railroad transportation, was followed and applied to the field of motor transportation by the Parker case, supra.

The most recent Supreme Court decision dealing with the Commission's function of issuing certificates of public convenience and necessity is United States v. Pierce Auto Freight Lines, Inc., 1946, 327 U.S. 515, 535, 536, 66 S.Ct. 687, 698, 90 L. Ed. 821, where, in reversing a District Court which had set aside a Commission order, the Supreme Court said:

"We think the court misconceived not only the effects of the Commission's action in these cases, but also its own function. It is not true, as the opinion stated, that '* * * the courts must in a litigated case, be the arbiters of the paramount public interest.' This is rather the business of the Commission, made such by the very terms of the statute. *The function of the reviewing court is much more restricted.* It is limited to ascertaining whether there is warrant in the law and the facts for what the Commission has done. Unless in some specific respect there has been prejudicial departure from requirements of the law or abuse of the Commission's discretion, the reviewing court is without authority to intervene. It cannot substitute its own view concerning what should be done, whether with reference to competitive considerations or others, for the Commission's judgment upon matters committed to its determination, if that has support in the record and the applicable law." (Emphasis supplied)

The plaintiff, Lang Transportation Corporation, has cited to this court the case of Interstate Commerce Commission v. Parker, 326 U.S. 60, 65 S.Ct. 1490, 1495, 89 L. Ed. 2051, to the effect that "Public convenience and necessity should be interpret-

ed so as to secure for the Nation the broad aims of the Interstate Commerce Act of 1940," together with a long line of decisions holding that existing carriers should normally be accorded the right to transport all traffic which they can handle adequately, efficiently and economically in the territory served by them, as against any new operator seeking to enter the field in competition with them.[10]

 As to the authority of the Commission to issue certificates of public convenience and necessity in the exercise of expert judgment in the field of transportation, see New York Central Securities Co. v. United States, 287 U.S. 12, 25, 53 S.Ct. 45, 77 L.Ed. 138; United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 482, 490, 62 S.Ct. 722, 86 L.Ed. 971; and, in the exercise of this administrative function, there are no specifications of considerations by which the Commission is to be governed in determining whether public convenience and necessity require the inauguration of motor vehicle service. Texas & Pacific R. Co. v. Gulf, C. & S. F. R. Co., 270 U.S. 266, 273, 46 S.Ct. 263, 70 L. Ed. 578; Chesapeake & Ohio R. Co. v. United States, 283 U.S. 35, 51 S.Ct. 337, 75 L.Ed. 824; Colorado v. United States, 271 · U.S. 153, 168, 46 S.Ct. 452, 70 L.Ed. 878.

In Interstate Commerce Commission v. Parker, 1945, 326 U.S. 60, 65, 65 S.Ct. 1490, 1492, 89 L.Ed. 2051, supra, the Supreme Court said:

"Public convenience and necessity is not defined by the statute. The nouns in the phrase possess connotations which evolved from a half-century experience of government in the regulation of transportation. When Congress in 1935 amended the Interstate Commerce Act by adding the Motor Carrier Act, it chose the same words to state the condition for new motor lines which had been employed for similar purposes for railroads in the same Act since the Transportation Act of 1920, § 402(18) and (20), 41 Stat. 477, 49 U.S.C.A. § 1 (18, 20). Such use indicated a continuation of the administrative and judicial interpretation of the language. Cf. Case v. Los Angeles Lumber Co., 308 U.S. 106, 115, 60 S.Ct. 1, 7, 84 L.Ed. 110. The Commission had assumed, as its duty under these earlier subsections, the finding of facts and the exercise of its judgment to determine public convenience and necessity. This Court approved this construction. Chesapeake & Ohio R. Co. v. United States, 283 U.S. 35, 42, 51 S.Ct. 337, 339, 75 L.Ed. 824. Cf. Gray v. Powell, 314 U.S. 402, 411, 412, 62 S.Ct. 326, 332, 86 L.Ed. 301. The purpose of Congress was to leave to the Commission authoritatively to decide whether additional motor service would serve public convenience and necessity. Cf. Powell v. United States, 300 U.S. 276, 287, 57 S.Ct. 470, 476, 81 L.Ed. 643. This, of course, gives administrative discretion to the Commission, cf. McLean Trucking Co. v. United States, 321 U.S. 67, 87, 88, 64 S.Ct. 370, 380, 381, 88 L.Ed. 544, to draw its conclusion from the infinite variety of circumstances which may occur in specific instances. * * *"

 Answering 6–A, supra, if in fact the plaintiffs herein had an opportunity to show post war conditions and failed to do so, their present plight is their own fault, and, whether the Commission should have granted a rehearing in a case which it has decided is a matter resting in its sound discretion. Carolina Scenic Coach Lines v. United States, D.C., 59 F.Supp. 336, affirmed 326 U.S. 680, 66 S.Ct. 37, 90 L.Ed. 398; and, under such circumstances, a denial to reopen a case would seem to be a proper exercise of its discretion.

 Answering 6–B, supra, in North Coast Transportation Co., et al., v. United States, D.C.N.D.Cal., 1944, 54 F.Supp. 448, 452, the District Court had before it the charge that it was an abuse of discretion for the Commission to refuse to reopen the proceedings to admit evidence of alleged radical changes in transportation conditions caused by the war. The court said: "Plaintiffs contend that since 1938, when

---

[10] Clark Common Carrier Application, I.C.C. Motor Carrier cases 445; In Georgia Motor Express Common Carrier Application, 10 M.C.C. 173, 181; In H & B Trucking Co. Common Carrier Application, 33 M.C.C. 211; In Cohen Common Carrier Application, 44 M.C.C. 854; In War Eagle Oil Company Application, 8 F. C.C., Par. 31,222.

the record before the Commission was closed, the war effort has caused radical changes affecting transportation, and that the Commission abused its discretion in refusing to reopen the proceeding and consider the application in the light of such changed conditions." The decision of the court dismissing the suit was affirmed by the Supreme Court per curiam, 323 U.S. 668, 65 S.Ct. 62, 89 L.Ed. 543, on the authority of Interstate Commerce Commission v. Jersey City, 322 U.S. 503, 64 S.Ct. 1129, 88 L.Ed. 1420.

The law is clear that future public convenience and necessity, as well as present public convenience and necessity, suffice under the statute to warrant action by the Commission in authorizing new motor carrier operations. In this connection the Commission was justified in considering, as in the case at bar, testimony relating to the growth and development of the region of the country involved and the potentiality of future traffic after the restrictions of wartime conditions had been eliminated and this court is not unmindful of the heavy influx of tourists over the highways in Utah and Nevada and permanent visitors to the West coast and the building up of communities en route requiring gasoline supplies and equipment. Interstate Commerce Commission v. Jersey City, 1944, 322 U.S. 503, 514-519, 64 S.Ct. 1129, 89 L. Ed. 1420; and United States v. Pierce Auto Freight Lines, Inc., 1946, 327 U.S. 515, 535, 66 S.Ct. 687, 90 L.Ed. 821.

■■■ Answering 6-C, supra, the Lang Transportation Corporation also objects to the ruling of the Commission on the ground that the ruling was based upon a stale record in that between November 18, 1944 (the date the last hearing before the Commission was closed), and June of 1946, a year and a half later, conditions had materially changed in that, for instance, the transportation requirements had materially

lessened since the war, but no effort was made, apparently, in the interim, by the Lang Transportation Corporation, to call the Commission's attention to this alleged change until a report adverse to the said plaintiffs had been received, and the plaintiffs were content to take a chance on a decision favorable to them. This constitutes a fatal lack of diligence. United States v. Northern Pac. R. Co., 288 U.S. 490, 494, 53 S.Ct. 406, 77 L.Ed. 914. The court therein said:

"Between January 15, 1930, and February 3, 1932, no application based on changed economic conditions was made to the Commission, and that body was allowed to consider the record and prepare a report without notice of any claim in that behalf. * * *

"Though the order substantially reduced the carriers' revenue, we do not consider the merits of the application for rehearing, as we think the carriers' lack of diligence in bringing this matter to the Commission's attention deprived them of any equity to complain of the refusal of their petition. They sat silent and took the chance of a favorable decision on the record as made. They should not be permitted to reopen the case for the introduction of evidence long available and susceptible of production months before the Commission acted. The denial of a rehearing, in view of this delay, was not such an abuse of discretion as would warrant setting aside the order. * * *" United States v. Northern Pac. R. Co., 288 U.S. 490, 494, 53 S.Ct. 406, 407.

Assuming, for the moment, that the plaintiffs herein could have brought themselves originally within the scope of the ruling of Atchison, Topeka & Santa Fe R. Co. et al. v. United States et al., 1932, 284 U.S. 248, 52 S.Ct. 146, 76 L.Ed. 273, supra,[11] and would thereby have become

---

[11] "In the discharge of its (the Commission's) duty, a fair hearing is a fundamental requirement. Interstate Commerce Comm. v. Louisville & Nashville R. Co., 227 U.S. 88, 91, 33 S.Ct. 185, 57 L.Ed. 431. In the instant proceeding, the hearing accorded related to conditions which had been radically changed, and a hearing, suitably requested, which would have permitted the presentation of evidence relating to existing conditions, was denied. We think that this action was not within the permitted range of the Commission's discretion, but was a denial of right. The order of the Commission which was thus made effective, and the ensuing supplemental order, cannot be sustained." Atchison, T. & S. F. R. Co.

entitled to a rehearing because of *radically changed conditions,* again assuming conditions to have changed radically meanwhile, the plaintiffs herein have, nevertheless, prejudiced their position by not having called these socalled radically changed conditions to the attention of the Commission between November 18, 1944, and June of 1946, and so, because of lack of diligence, come squarely within the rule enunciated by the Supreme Court in United States v. Northern Pacific R. Co., 288 U. S. 490, 494, 53 S.Ct. 406, 77 L.Ed. 914 (supra) a later case. (Emphasis supplied)

Answering 6–D, supra, that the Commission misconceived its statutory powers in that it erroneously and improperly disregarded the burden of proof, what weight should be given to the evidence before the Commission in any particular case is likewise a matter for the Commission to decide. The weight and value of the evidence, and the inferences to be drawn therefrom, are for the Commission to determine.[12]

Answering 6–E, supra, the Lang Transportation Corporation takes the position that the Commission had consistently followed the principle that, in the absence of evidence of specific deficiencies in existing service, or of a showing of benefits from a new service, existing carriers should be accorded the right to transport all traffic which they can handle adequately, efficiently and economically in the territory served by them; but this line of reasoning is unsound and an adherence thereto would forever stifle healthy competition.

From the preceding authorities, extensively delineating the wide range of administrative discretion and judgment conferred upon the Commission, it was clearly proper for that expert body in the case at bar, to exercise its discretion and judgment and come to its conclusion, instead of adopting the arbitrary rule that an applicant should never be permitted to institute new service unless existing carriers already in the field had first been accorded an opportunity to furnish such additional service themselves.[13]

It is clear that under Federal law the carriers first in the field within a particular area do not enjoy legal protection against competition subsequently arising. The Interstate Commerce Commission has power to authorize any number of different carriers to operate within the same territory. The rule applicable in federal courts, applying the statutory standards established by Congress in the Interstate Commerce Act, affords less protection to existing carriers and empowers the Commission to exercise greater discretion in authorizing the institution of new or additional operations, than is the case under state law in some jurisdictions.[14]

---

et al. v. United States, et al., 1932, 284 U.S. 248, 52 S.Ct. 146, 150, 76 L.Ed. 273.

[12] United States v. Carolina Freight Carriers Corporation, 1942, 315 U.S. 475, 484, 490, 62 S.Ct. 722, 86 L.Ed. 971; United States v. Pan American Petroleum Corporation, 1938, 304 U.S. 156, 158, 58 S.Ct. 771, 82 L.Ed. 1262; Merchants Warehouse Co. v. United States, 1931, 283 U.S. 501, 508, 51 S.Ct. 505, 75 L.Ed. 1227; C. R. I. & P. R. Co. v. United States, 1927, 274 U.S. 29, 33–34, 47 S.Ct. 486, 71 L.Ed. 911; Assigned Car Cases, 1927, 274 U.S. 564, 580, 47 S.Ct. 727, 71 L.Ed. 1204; Loving v. United States, D. C.W.D.Okl., 1940, 32 F.Supp. 464, 467, affirmed 310 U.S. 609, 60 S.Ct. 898, 84 L. Ed. 1387; Transamerican Freight Lines v. United States, D.C.Del., 1943, 51 F. Supp. 405, 410; Fish Transport Co., Inc. v. United States, D.C.D.Mass., 1944, 647 F.Supp. 75.

[13] It should be noted that Cantlay & Tanzola can only in a very formalistic sense (as being an applicant under Sec. 207 of the Act, 49 U.S.C.A. § 307, instead of a "grandfather" applicant under Sec. 206 of the Act, 49 U.S.C.A. § 306, be described as a new operator. Since the issuance of the certificate on April 3, 1947, pursuant to the Commission's order, Cantlay and Tanzola have conducted operations thereunder continuously. Prior thereto Cantlay and Tanzola had been operating under temporary authority. Such operation may of itself constitute evidence of public convenience and necessity. Crichton v. United States, D. C.S.D.N.Y., 1944, 56 F.Supp. 876, affirmed 323 U.S. 684, 65 S.Ct. 559, 89 L. Ed. 554; A. B. & C. Motor Transp. Co. v. United States, D.C.Mass., 1946, 69 F. Supp. 166, 169.

[14] Pennsylvanian R. Co. v. United States, D.C.W.D.Pa., 1930, 40 F.2d 921, 925; Indian Valley R. R. Co. v. United States, D.C.N.D.Cal., 1931, 52 F.2d 485, 487; North Coast Transportation Co. v.

It has been expressly held that the Commission may authorize new service for the very purpose of providing the public with the benefits of competition.[15]

In Chesapeake & Ohio R. Co. v. United States, 283 U.S. 35, 38, 41–43, 51 S.Ct. 337, 338, 75 L.Ed. 824, the claim was advanced that "the Commission is not authorized by the Act to grant a certificate of public convenience and necessity for new construction upon a naked finding that competition between carriers and competitive service to shippers will result," but the Supreme Court held that the Commission was empowered "to authorize construction of new lines to provide for shippers such competing service as it should find to be convenient or necessary in the public interest."

Moreover, it has been pointed out that "one of the weapons in the Commission's arsenal is the right to authorize competition," and that there is "no merit in the contention that if additional service is required the Commission must impose the duty of supplying such additional service upon existing carriers." Davidson Transfer & Storage Co. v. United States, D.C. E.D.Pa., 1942, 42 F.Supp. 215, 219, affirmed 317 U.S. 587, 63 S.Ct. 31, 87 L.Ed. 481. See A. B. & C. Transportation Co., Inc., v. United States, D.C.Mass. 1946, 69 F.Supp. 166, where a three judge court recently had occasion to reject the contention which the plaintiffs here advance.

■■■■ Answering 6–F, supra, to the effect that the Commission erred in granting its certificate of public convenience and necessity to Cantlay & Tanzola in view of its finding to the effect that the Lang Transportation Corporation was adequately equipped, able and willing to serve the needs of all shippers within the territory

involved in an adequate and efficient manner, the Commission's decision that the transportation service, proposed by the applicant, Cantlay & Tanzola, Inc., is required by public convenience and necessity, is not invalidated by the absence of a positive finding that existing carriers are not providing adequate transportation facilities. An increase in competition is not a reason for denying the Commission's authority to issue a certificate.

"This case precludes any suggestion that carriers initially in a field are immune against additional and competitive carriers in the face of public convenience and necessity. As stated in Section 207(b), 49 U.S.C.A. § 307(b), a certificate under the Act does not confer any proprietary or property rights in the use of the public highways * * *" In the light of the cases cited the "Commission was not required to make a positive finding that existing service was inadequate." A. B. & C. Motor Transp. Co. v. United States, D.C., 69 F.Supp. 166, 169.

■■■■ Answering 6–G, supra, from a reading of the transcript of the proceedings before the Interstate Commerce Commission, consisting of over thirteen hundred pages of typewritten transcript, this court is of the opinion that the Commission's order and report of April 8, 1946, is supported by substantial evidence, and meets all legal requirements so as to cause this court to come to the conclusion that the Commission was fair, impartial and exercised its matured and best judgment, free from bias or prejudice; and this finding in and of itself terminates all judicial inquiry under the authorities.

The type of evidence in the record before the Commission is of the conventional sort which is customarily offered in this

United States, D.C.N.D.Cal., 1944, 54 F. Supp. 448, 451. Cf. for example on the other hand North Coast Transportation Co. v. Department of Public Works, 1930, 157 Wash. 79, 81, 288 P. 245; Central Ohio Transit Co. v. Public Utilities Commission, 1926, 115 Ohio St. 383, 391–393, 154 N.E. 323; Southside Transportation Co. v. Commonwealth, 1932, 157 Va. 699, 704, 705, 161 S.E. 895.

15 The authorities recognize that administrative regulation while beneficial so far

as it goes, is not an adequate substitute for vigorous competition from other concerns engaged in the same line of business. Virginia State Lines v. United States, D.C.W.D.Va., 1942, 48 F.Supp. 79, 81; Santa Fe Trails Stages, Inc., Common Carrier Application, 21 M.C.C. 725, 748. The public interest requires the encouragement of such competition from within the industry itself as an effective stimulus to adequate service.

type of case. There were shipper witnesses, public witnesses, and statistical and geographical evidence regarding territory and traffic.[15][16]

In American Trucking Association, Inc. v. United States, 1945, 326 U.S. 77, 86, 65 S.Ct. 1499, 89 L.Ed. 2065, the court reiterated that it was for the Commission to "weigh the advantages" of granting an application against the injury arising therefrom in order "to determine where public convenience and necessity lies." This the Commission has done; and this court feels that there is ample evidence in the record to justify and support the conclusions reached by the Commission in this case, and the last question for determination in response to 6–H, supra, is whether or not the Findings of the Commission are sufficient in fact and in law for a predication of the Report and Order of April 8, 1946, which in itself is analogous to a judgment.

Answering 6–H, supra, the plaintiffs herein, in support of their strenuous contention that the findings of the Commission are insufficient to support the report and order of April 8, 1946, have cited cases holding that "Basic or essential findings (of the Commission) cannot be supplied by inference or implication, and that the courts will not search the record to ascertain whether general and ambiguous statements in the report, intended to serve as findings, may, by construction, be given a meaning sufficiently definite and certain to constitute a valid basis for the order [17] and that where an order of the Interstate Commerce Commission lacks the basic and essential findings required for the support thereof, such order will be set aside [18] with which decisions this court con-

---

[16] There was evidence showing the growth and increasing population of the territory to be served (Tr. 48, 762, 765, 778, 866). There was evidence that existing concerns located there anticipate expansion of their volume of business (Tr. 95, 112, 180, 616, 641). There was evidence that the traffic in petroleum products would increase with tourist trade after the termination of wartime rationing and restricted consumption of gasoline (Tr. 184, 588, 762, 765, 871, 927). Even witnesses for protestants, now satisfied with Lang's service, admitted the growth and expanding needs of the territory (Tr. 1117–8). Similarly a revival in the gold mining industry was anticipated after the war (Tr. 859), and would lead to increase in the demand for transportation.

Many shipper witnesses also testified, stating that they favored Cantlay and Tanzola's application and would use the service if the application were granted. (Tr. 84, 118, 184, 779, 812, 902, 926). The testimony indicated that shippers in part of the territory involved were without rail facilities. (Tr. 800–801, 813, 852, 875, 902, 922). The record shows that if applicant's service were not continued, shippers would be dependent upon a single carrier for transportation. The companies and communities concerned regarded this as an unsatisfactory situation, and contrary to sound business policy. (Tr. 81, 592, 606–7, 769–770, 851). By a program of acquisition, Lang has eliminated the competition of other carriers. (Tr. 27, 33–34, 527).

The shippers also testified regarding difficulties they had experienced in receiving service from Lang Transportation Corporation, and described specific instances of poor service by that company (Tr. 647, 674–5, 679, 815, 825, 916, 927, 938, 942). There was, of course, as is customary in this type of proceeding, testimony offered by Lang to show that its service was good and no other carrier was needed. (Tr. 1092, 1112, 1136, 1154, 1124, 1214.)

Public witnesses also supported Cantlay and Tanzola's application (Tr. 592, 606–7) (and 875). A resolution of the St. George Chamber of Commerce was offered by a witness on behalf of that organization (Exhibit 38). There was evidence regarding the volume of traffic in the territory involved (Tr. 42, 45, 950 and exhibits), showing that the available traffic was sufficient to support applicant's operation as well as Lang's. Of special significance as proving need for the applicant's service, is the evidence of the extent to which the public has in fact utilized it when available under temporary authority (Ex. 48).

[17] Atchison, Topeka & Santa Fe R. Co. v. United States, 295 U.S. 193, 55 S.Ct. 748, 79 L.Ed. 1382, 1390; Panama Refining Co. v. Ryan, 293 U.S. 388, 433, 55 S.Ct. 241, 79 L.Ed. 446, 465; Wichita R. & L. Co. v. P. U. C., 260 U.S. 48, 59, 43 S.Ct. 51, 67 L.Ed. 124, 130; Inland Motor Freight v. United States, D. C., 60 F.Supp. 520.

[18] Florida v. United States, 282 U.S. 194, 51 S.Ct. 119, 75 L.Ed. 291; United States v. Baltimore & Ohio R. Co., 293 U.S. 454, 55 S.Ct. 268, 79 L.Ed. 587;

curs, and plaintiffs also cite to this court the case of Inland Motor Freight et al. v. United States et al., D.C.E.D.Wash., 1945, 60 F.Supp. 520, decided by Stephens, Circuit Judge, and Schwellenbach and Clark, District Judges, which reversed the Commission for lack of sufficient findings.

In Florida v. United States, 282 U.S. 194, 51 S.Ct. 119, 75 L.Ed. 291, the United States Supreme Court set aside an order of the Interstate Commerce Commission in a rate case upon the grounds that the Commission's order lacked the basic or essential findings required for the support thereof, finding that the order of the Commission was not supported by the findings. The statement of the court on page 215 of 282 U.S., on page 125 of 51 S.Ct., is as follows:

"The question is not merely one of the absence of elaboration or of a suitably complete statement of the grounds of the Commission's determination, to the importance of which this court has recently adverted (Beaumont, S. L. & W. R. Co. v. United States, decided November 24, 1930, 282 U.S. 74, 51 S.Ct. 1, 75 L.Ed. 221) but of the lack of the basic or essential findings required to support the Commission's order. * * * we conclude that the portion of the order of the Commission which is now under review, with respect to intrastate rates, is not supported by the findings of the Commission and this part of the order must be set aside."

See also: United States v. Baltimore & O. R. Co., 293 U.S. 454, 464, 55 S.Ct. 268, 79 L.Ed. 587, 594; United States v. Chicago M. St. P. & P. R. Co., 294 U.S. 499, 510, 511, 55 S.Ct. 462, 79 L.Ed. 1023, 1031, 1032; United States v. Carolina Freight Carriers Corporation, 315 U.S. 475, 488, 62 S.Ct. 722, 86 L.Ed. 971, 982.

A copy of the findings in the case at bar, containing the report and order of April 8, 1946, is attached to the plaintiff, Lang Transportation Corporation's original complaint as Exhibit A, and covers fourteen pages of typing. It recapitulates the for-

mer rulings of the Commission and then sets forth, inter alia, (sheet 7 and sheet 8) that:

"* * * the record is clear that Lang is the only for-hire motor carrier actively providing a transportation service from and to the involved points. A substantial part of the petroleum products consumed in the Southern Utah and Nevada destinations covered by this application is and must continue to be transported thereto by motor vehicle and the evidence submitted shows that Southern Utah and Southern Nevada have been experiencing great industrial development and growth in population with resulting increased consumption of petroleum products. * * * Notwithstanding the possibility that the rail carriers will regain a portion of the bulk petroleum traffic to the points they serve after the present emergency, the record is convincing that the territory proposed to be served will support the services of an additional motor common-carrier service. Furthermore, because of the general character of their operations it does not appear that the existing rail and motor carriers would suffer any material hardship as a result of the granting of authority for the proposed service or that their ability to continue operations in the considered territory would be impaired to any appreciable degree. The availability of two motor common carriers is favored by several shippers although it is admitted that in normal times the service of Lang has been reasonably satisfactory. We are of the opinion that the competition that would result from a grant of authority to perform the proposed service in the territory involved would provide the stimulus for a better service of the public. This anticipated result has been the basis for granting certificates in a certain proceedings confined to passenger transportation service. * * * Considering the record as a whole, we are of the opinion that the proposed territory will support an additional motor common carrier service without impairing the existing services of protestants now serving it, and that the pub-

United States v. Carolina Freight Carrier's Corp., 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971; Howard Hall Co. v. United States, 315 U.S. 495, 62 S.Ct. 986,

86 L.Ed. 986; Shawmut Transportation Co. v. United States, D.C., 49 F.Supp. 831; Inland Motor Freight v. United States, D.C., 60 F.Supp. 520.

lic interest will best be served by granting the authority sought.

"Applicant is fit and able, financially and otherwise, to conduct the proposed operations."

Then follows, as a finding, in substantially the same phraseology, the provisions as incorporated in the report and order of April 8, 1946, supra.

Findings of the Interstate Commerce Commission that public convenience and necessity required operation by applicant as a common carrier by motor vehicle of passengers and their baggage between San Francisco and Seattle, that applicant was fit, willing and able, and that certificate should be granted, supported order granting certificate. Interstate Commerce Act, §§ 14, 207, 49 U.S.C.A. §§ 14, 307, from North Coast Transp. Co. et al. v. United States, D.C., 54 F.Supp. 448.

In the instant case the Commission has specifically found that the competition that would result from the grant of authority to operate the proposed service in the territory involved would provide a stimulus for a better service to the public; that the proposed territory would support an additional motor carrier service without impairing the existing service of protestants now serving it; and that the public interest would be best served by granting the authority sought.

These basic and essential findings, the court finds, are sufficient to support the report and order of the Commission of April 8, 1946.

The Commission has set forth its reasons and findings in its report, and so long as such findings have substantial support in the evidence and provide a rational basis for the conclusion reached, they are unassailable here. Virginian R. Co. v. United States, 272 U.S. 658, 665, 47 S.Ct. 222, 71 L.Ed. 463; Mississippi Valley Barge Line v. United States, 292 U.S. 282, 286, 287, 54 S.Ct. 692, 78 L.Ed. 1260; Rochester Telephone Corp. v. United States, 307 U.S. 125, 146, 59 S.Ct. 754, 83 L.Ed. 1147.[19]

This court, in rendering its unanimous opinion in this case, finds as follows:

(1) That the report and order of the Commission of April 8, 1946, should be affirmed;

(2) That the prayer of the plaintiffs that the proceedings before the Commission be reopened for the purpose of taking further testimony should be denied;

(3) That the prayer that a temporary or interlocutory injunction be issued restraining the Commission from issuing to Cantley & Tanzola, Inc., a certificate of public convenience should be denied; and

(4) That this suit should be, and the same is hereby, ordered dismissed.

Counsel for the defendants and the intervener are hereby directed to present Findings of Fact and Conclusions of Law, and a Judgment predicated thereon, for the signature of the court, with costs to the defendants and to intervenor. The Findings of Fact and Conclusions of Law and Judgment shall be presented to the court for signature within ten days after notice of the ruling of this court, submitting same to counsel for the plaintiffs for approval as to form.

---

[19] Given that the report contains all the essential findings required, Cf. Florida v. United States, 282 U.S. 194, 51 S. Ct. 119, 75 L.Ed. 291, the Commission is not compelled to annotate to each finding the evidence supporting it. United States v. Pierce Auto Lines, 327 U.S. 515, 529, 66 S.Ct. 687, 90 L.Ed. 821.

See also: 15 C.J.S. Commerce § 145, pp. 534–538, as to the sufficiency of the Report of Findings; Findings and Orders of the Commission.