**NEUENDORF TRANSPORTATION CO.,**
a corporation, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant,**

and

**Interstate Commerce Commission,**
**Intervening Defendant,**

and

**Steffke Freight Co., a corporation,**
**Intervener.**

**No. 2832.**

United States District Court
E. D. Wisconsin.

Oct. 31, 1956.

Philip H. Porter, Madison, Wis., for plaintiff.

Victor R. Hansen, Asst. Atty. Gen., James E. Kilday and Maurice A. Fitzgerald, Dept. of Justice, Washington, D. C., for defendant, United States.

Robert W. Ginnane, Gen. Counsel, James Y. Piper, Asst. Gen. Counsel, Interstate Commerce Commission, Washington, D. C., for intervening defendant, Interstate Commerce Commission.

Glenn W. Stephens, Madison, Wis., for intervening defendant, Steffke Freight Co.

Before DUFFY, Chief Judge, and STONE and GRUBB, District Judges.

GRUBB, District Judge.

This action was brought attacking certain orders of the Interstate Commerce Commission. Clarence J. Neuendorf made application to the Commission on January 30, 1936 for a permit to operate as a contract carrier under the so-called "grandfather clause" of the Interstate Commerce Act, section 206(a) (1), 49 U. S.C.A. § 306(a) (1). At a later date his business was taken over by a co-partnership and still later was acquired by this plaintiff.

The files of the Commission returned in this action are as follows: MC 2754 indicates that the application of January 30, 1936, Exhibit A–I–B, lists four contractors whom Neuendorf had been serv-

ing; three of them were from Wausau and one was from Chicago. The territory claimed in that application lists Marathon county. The application is accompanied by a highway map circling the territory which Neuendorf claimed he had been serving. Wausau is in the territory circled. Also attached is a certified copy of an amendment to Neuendorf's Wisconsin license, dated October 1, 1934, covering transportation from Wausau to the Illinois state line, also amendments of October 17, 1934 and of July 17, 1935. The supplemental information attached and dated December 1, 1936 lists Wausau contracts. Among the bills of lading submitted, there were three from Wausau, all in the year 1933, a total of twenty-two were submitted, all but nine of which were dated in the year 1933 or before.

October 9, 1937 the Commission entered its first order. Marathon county was listed as part of the territory to be covered. Neuendorf, on October 25, 1937, petitioned for reconsideration and correction of the order of October 9, 1937. The requested correction related to commodities to be covered and to certain territory claimed to have been omitted which Neuendorf claimed should have been included. There was nothing in this petition indicating any relinquishment of Marathon county, or Wausau, its county seat.

May 27, 1938 an order was entered as an appendix to the previous order making some changes with reference to commodities and specifying with reference to territory "between Medford, Wis., and points and places within 35 miles of Medford, on the one hand, and Chicago, Ill., on the other." There is nothing in the Commission file to indicate the reason for the change in the territory covered.

On January 13, 1954 the Albrent Freight and Storage Corporation and Steffke Freight Company, as complainants, filed with the Interstate Commerce Commission a complaint with reference to the operations of the plaintiff herein in Wausau. Those proceedings will be alluded to later.

On October 24, 1955 the plaintiff filed a petition in MC 2754 for a review and correction of Certificate of Public Convenience and Necessity. That petition recites that Wausau is one of the important and crucial points "applicant was serving on the crucial date and continuously since that date". It recites that shortly after the amended certificate was received in 1938, Neuendorf called on one Eldredge, District Supervisor of the Interstate Commerce Commission at Madison to discuss the amended certificate and was advised by Eldredge that he could continue serving Wausau under the amended certificate if any part of it was within the 35-mile radius from Medford. Petitioner sets forth that if there had been any doubt about that, Neuendorf would have promptly petitioned for a reconsideration. It recites that the plaintiff and its predecessors in interest have continuously served Wausau since that time; that if plaintiff is stopped, plaintiff will be deprived of a valuable right conferred by Congress without due process of law, and prays that the Commission enter an order for the purpose of correcting the certificate to eliminate any doubt as to petitioner's right to serve Wausau, or in the alternative, that the Commission refer its file pertaining to those operating rights to its field office for further investigation "and afford petitioner the opportunity to present such further facts and evidence * * * to establish its right to serve Wausau * * *" and take such further action as may be just in the premises.

That petition was served on Steffke and Albrent. They replied objecting to the granting of the petition or the reopening of the matter. Thereafter, and on November 9, 1955, plaintiff filed a "Petition For Permission To File Late Petition For Reopening and Reconsideration" under Rule 101(e) of the general rules of practice. In that petition it recites that Neuendorf had submitted certain documents and oral proofs to the field representative of the Commission, reiterates the previous history and the claim that petitioner contacted the district super-

visor when the first amendment was made, was informed, as above set forth, that had he been informed otherwise, he would have petitioned the Commission for a reconsideration of his "grandfather" application; that it was not until more than a decade later that the Commission itself passed upon the question as to whether a whole municipality may be served if any part of it is embraced by a specified radius mileage, but that plaintiff was not informed of this holding until the examiner for the Commission made his recommendations in Docket No. MC–C–1613; that the petitioner and its predecessors have served Wausau continuously since prior to June 1, 1935 in the belief they had a right to do so which was not challenged until the filing of the complaint in MC–C–1613. Petitioner prays permission under Rule 101(e) to file a late petition for reopening and reconsideration "and/or a hearing with respect thereto".

January 10, 1956, the Commission denied the petition for waiver of Rule 101 (e) on the ground that the petitioner had failed to show good cause at this late date that would warrant waiver and the acceptance of the late filed petition.

March 19, 1956, the plaintiff filed a petition for a reconsideration of the order of January 10th denying petitioner's request for permission to file a late dated petition. That petition reiterates the allegations as to the advice of the Commission's field staff, that part of the function of the field staff was to advise motor carriers that the petitioner was justified in feeling secure in its operating rights based upon advice received from the field staff and that, therefore, there was no reason why petitioner's predecessor should have objected to the Commission's order of May 27, 1938. It again reiterates that the Commission's decisions, with reference to situations where a radius bisected a municipality, did not come until a decade later and did not come to the petitioner's notice until the complaint was filed in MC–C–1613. That since the filing of the first petition, petitioner's president recollects that a complaint was made by letter in 1941 to the commission's field office in Madison by a competing carrier that petitioner was serving Wausau without authority, that there was some correspondence between representatives of the Commission as a result of which the district supervisor advised petitioner's president that so long as any portion of Wausau was within 35 miles of Medford, petitioner could serve the entire city. That this strengthened the assurances which had been received in 1938. It points out that it was nearly 17 years after the order was issued before a formal complaint was filed against petitioner. Petitioner prays that the order of January 10, 1956 be vacated and that petitioner be granted permission to file a late petition for reopening and reconsideration, "and/or a hearing with respect thereto, of the application for a certificate * * * under the provisions of Section 206(a) (1) * * * " of the Act. A reply and objection was filed by Albrent and Steffke.

On May 23, 1956 the petition for reconsideration was denied "for the reason that petitioner has failed to adduce any new facts or additional evidence to warrant a reversal of the decision reflected in the order of the Commission, Division 1, dated January 10, 1956."

In proceedings in MC–C–1613, instituted January 13, 1953 by Albrent Freight and Storage Corp. and Steffke Freight Co., after some dispute about the measurement of the 35-mile radius from Medford as to its inclusion of Wausau or any part thereof, an affidavit was filed by a state geologist setting forth that he had measured on governmental geological surveys and found that the 35-mile radius from Medford does not include any part of Wausau. While this finding was attacked originally in the complaint at the time of the oral argument, counsel for plaintiff admitted that there was substantial evidence from which the Commission could find that no part of Wausau was within the 35-mile radius of Medford.

On the oral argument, all counsel conceded that shortly after this Act went in-

to effect, the commission had upwards to 90,000 applications for permits under the "grandfather clause"; that the Commission was under-staffed and unprepared to process that many applications thoroughly and in detail; that the applications had been quite informal in many instances and quite hastily processed by field representatives because of the lack of time to give each application the checking and study which it would merit and which would have been given had the Commission had the time and the force to process these applications carefully.

■ Congress intended by the "grandfather clause" that carriers who were in bona fide operation on June 1, 1935 and thereafter to the time of the application for a certificate were entitled to such certificates as a matter of right. The "grandfather clause" reads as follows:

"* * * *  Provided, however, That, subject to section 310 of this title, if any such carrier or predecessor in interest was in bona fide operation as a common carrier by motor vehicle on June 1, 1935, over the route or routes or within the territory for which application is made and has so operated since that time, * * * the Commission shall issue such certificate without requiring further proof that public convenience and necessity will be served by such operation, and without further proceedings, if application for such certificate was made to the Commission as provided in paragraph (b) of this section and within one hundred and twenty days after October 1, 1935, * * *."  49 U.S.C.A. § 306.

These rights are valuable. The record in this case reveals that plaintiff did a business in Wausau that exceeded $200,000 a year and that it was a substantial portion of its total business.

If the determination were before us as an original proposition, we would feel that, assuming plaintiff could establish the facts alleged in its petitions, it should be granted the requested amendment. We would certainly feel that it should be given the opportunity to present the evidence. We have here a situation where through no fault of the petitioner it was a victim of the rush for certificates following the effective date of the statute where the Commission was not equipped to handle and process the thousands of applications before it as carefully as it no doubt would have processed them had it had the opportunity. The petitioner has served the city of Wausau, believing it had the right to do so, openly and notoriously, from upwards to 17 years under the certificate granted and thereafter amended. It had very little, if any, reason to suspect that there was any question of its right to serve Wausau until the filing of the complaint by its competitors in 1954. On two previous occasions when a question was raised, petitioner's predecessors contacted the employees of the Commission for advice and claimed to have received reassuring information which would not cause them to doubt their right to serve Wausau.

■ Regardless of our feelings as to what the Commission should have done, we are powerless to grant the relief demanded in the complaint unless we can make a finding of an abuse of discretion, of arbitrary or capricious action on the part of the Commission. Congress has given the Commission extremely broad discretion in entertaining petitions such as this. The Supreme Court, speaking through Mr. Justice Frankfurter in 1939 in the case of Federal Communications Commission v. Pottsville Broadcasting Co., 309 U.S. 134, 141, 60 S.Ct. 437, 441, 84 L.Ed. 656, sets forth that the situation is different from that involved where an appellate court is reviewing a discretionary order of a lower court. The issue is stated to be observance by the courts of the distribution of authority made by Congress as between its power to regulate commerce and the reviewing power which it has conferred upon the courts under Article III of the Constitution.

"But to the extent that a federal court is authorized to review an administrative act, there is superimposed upon the enforcement of legis-

lative policy through administrative control a different process from that out of which the administrative action under review ensued. The technical rules derived from the interrelationship of judicial tribunals forming a hierarchical system are taken out of their environment when mechanically applied to determine the extent to which Congressional power, exercised through a delegated agency, can be controlled within the limited scope of 'judicial power' conferred by Congress under the Constitution.

"Courts, like other organisms, represent an interplay of form and function. The history of Anglo-American courts and the more or less narrowly defined range of their staple business have determined the basic characteristics of trial procedure, the rules of evidence, and the general principles of appellate review. Modern administrative tribunals are the outgrowth of conditions far different from those. To a large degree they have been a response to the felt need of governmental supervision over economic enterprise—a supervision which could effectively be exercised neither directly through self-executing legislation nor by the judicial process. That this movement was natural and its extension inevitable, was a quarter century ago the opinion of eminent spokesmen of the law. Perhaps the most striking characteristic of this movement has been the investiture of administrative agencies with power far exceeding and different from the conventional judicial modes for adjusting conflicting claims—modes whereby interested litigants define the scope of the inquiry and determine the data on which the judicial judgment is ultimately based. Administrative agencies have power themselves to initiate inquiry, or, when their authority is invoked, to control the range of investigation in ascertaining what is to satisfy the requirements of the public interest in relation to the needs of vast regions and sometimes the whole nation in the enjoyment of facilities for transportation, communication and other essential public services. These differences in origin and function preclude wholesale transplantation of the rules of procedure, trial and review which have evolved from the history and experience of courts. Thus, this Court has recognized that bodies like the Interstate Commerce Commission, into whose mould Congress has cast more recent administrative agencies, 'should not be too narrowly constrained by technical rules as to the admissibility of proof,' * *."

The following are some of the decisions wherein it is pointed out that the power of reviewing courts is very narrowly limited:

"* * * it has been held consistently that rehearings before administrative bodies are addressed to their own discretion. * * * Only a showing of the clearest abuse of discretion could sustain an exception to that rule." United States v. Pierce Auto Freight Lines, 1945, 327 U.S. 515, 66 S.Ct. 687, 697, 90 L.Ed. 821.

Accord, Interstate Commerce Commission v. City of New Jersey, 1944, 322 U.S. 503, 64 S.Ct. 1129, 88 L.Ed. 1420; Lang Transp. Corp. v. United States, D.C.Cal.1948, 75 F.Supp. 915, 925; and Brooks Transp. Co. v. United States, D.C. Va.1952, 108 F.Supp. 244, 248.

As to the power of the court to order affirmative action, see United States ex rel. Chicago Great Western R. Co. v. Interstate Commerce Commission, 1934, 294 U.S. 50, 55 S.Ct. 326, 79 L.Ed. 752 and Interstate Commerce Commission v. United States, 1922, 260 U.S. 32, 43 S.Ct. 6, 67 L.Ed. 112.

■ The court does not feel that it can, within the tests laid down, find that there has been arbitrary or capricious action on the part of the Commission, par-

ticularly in view of the years of delay in attempting to get the certificate. amended. If it were within the court's power, the court would hold that, assuming the allegations of the petition to be true, there was certainly "excusable" or even "justifiable" neglect on the part of plaintiff and its predecessors accounting for its delay in applying for the amendment and correction.

For the foregoing reasons the prayer of the complaint will be denied and the suit will be dismissed.